349 So.2d 311 (1977)
STATE of Louisiana, Appellee,
v.
Aaron ANDERSON, Jr., Appellant.
Nos. 58911 and 58912.
Supreme Court of Louisiana.
July 1, 1977.
Rehearing Denied September 2, 1977.
*312 Alex W. Wall, Baton Rouge, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Robert H. Hester, Marilyn C. Castle, Asst. Dist. Attys., for appellee.
TATE, Justice.
The defendant Anderson was convicted of armed robbery, La.R.S. 14:64, and sentenced as a second offender, La.R.S. 15:529.1, to thirty-three years imprisonment at hard labor.
Upon his appeal,[1] the defendant urges two principal assignments of error: (1) that the defendant's sentence was erroneously enhanced, since the state did not prove he was a second offender within the meaning of La.R.S. 15:529.1 (Assignments 8, 9, 10); and (2) that the robbery conviction should be set aside, because the trial court erroneously admitted an oral statement by a co-defendant (Assignment 1).[2]
For the reasons to be stated, we find no merit to the latter contention and, accordingly, affirm the conviction; but we sustain the former contention and set aside the enhanced sentence.

I.
By Assignments 8, 9, and 10, the defendant attacks as erroneous the trial court's imposing upon the defendant an enhanced sentence, as well as its holding that the accused was a second offender within the meaning of La.R.S. 15:529.1.[3] Essentially, these assignments urge that the present offense was committed more than five years after "expiration of the maximum sentence . . . of the previous conviction," La.R.S. 15:529.1 C, a necessary prerequisite for its use as a prior conviction.[4]
In the basic prosecution, the defendant was convicted of an armed robbery committed on August 2, 1975. After conviction of *313 that offense, the state filed an information charging the defendant as a second offender on the basis of a February 20, 1967 felony conviction. For that offense, he had been sentenced on March 3, 1967 to five years and six months imprisonmenta sentence which, under its terms, would have expired on September 3, 1972.
Thus, under the wording of 529.1 C, the second offense of August 1975 occurred within five years of a maximum sentence as originally imposed in the minutes.
However, in fact, the defendant was finally discharged (not paroled) from the penitentiary on June 19, 1970. This was because the defendant was pardoned for part (six months) of the original sentence, and also because the original sentence was diminished by law for "good time" credit earned by good behavior during confinement. La.R.S. 15:571.3.[5]
Therefore, under the "Full Term Date", the warden's certificate shows the June 10, 1970 date as superseding the initial September 4, 1972 date, by virtue of "Act 426", the good-time enactment. See footnote 5.
The defendant's contention, thus, is that "the expiration of the maximum sentence" for the previous offense dates, not from the sentence as initially contemplated by the minute entry, but rather from the actual expiration of the maximum sentence, as shortened by pardon and "good time" diminution allowed by law.[6] If so, the evidence shows that the present offense was committed more than five years after expiration of the maximum sentence for the prior offense; therefore, the defendant cannot be sentenced as a second offender.
The defendant's position is well taken. The interpretation urged by the defendant is in accord, as will be seen, with the general purpose of the five-year "cleansing" period, as well as with the principle that statutes imposing penalties upon individuals are strictly construed. It is also supported by clarifying language in the same statute, La.R.S. 529.1 F, as well as by the language and scheme of a related statute regulating paroles, revocations, and final discharges from sentences initially imposed.
La.R.S. 15:529.1 F of the multiple offender statute, describes the prima facie evidence required by the state to support a defendant being adjudged a multiple offender, and thus subject to enhanced punishment.[7] The records of the prior offense required to be introduced shall contain: "a statement of the court in which a conviction was had, the date and time of sentence, length of time imprisoned, and date of discharge from prison or penitentiary." (Italics ours.)
The section further provides that these "shall be prima facie evidence on the trial of any person for a second and subsequent offense of the imprisonment and of the discharge of the person, either by a pardon or expiration of his sentence as the case *314 may be under the conviction stated and set forth in the certificate." (Italics ours.)
Construing the act as a whole, the expiration of the sentence intended to fix the commencement of the five-year "cleansing" period is the date of the individual's actual "discharge" from being subject to penitentiary confinement under the earlier conviction relied upon. If the initial sentence for the offense reflected by the minutes were the sole criterion, the showing required by the state would not include as part of the state's prima facie case any indication of the date of discharge. Further, the circumstance that the original sentence was somewhat shortened (as here) by a pardon would be immaterial. Subsection 529.1 F equates the "expiration of his sentence" with the defendant's "discharge" from custodial liability.
The reference to the five years commencing after "expiration of the maximum sentence" in 15:529.1 C can best be understood by reference to the parole statute, La.R.S. 15:574.1-.14. In main scheme, this was first enacted as Act 44 of 1942 as a companion act to Act 45 of 1942, the genesis of our present multiple-offender statute (i.e. of La.R.S. 15:529.1).[8]
The provisions of the parole statute are of assistance in determining that the "expiration of the maximum sentence" of the multiple offender statute occurs when the convicted person is finally discharged from state supervision or custody.
When a person is paroled, he is subject to the orders and supervision of the parole board, but nevertheless "Each parolee shall remain in the legal custody of the institution from which paroled * * *." La.R.S. 15:574.7 A. "When the parolee has completed his full parole term, he shall be discharged from parole and shall be issued a final order of discharge by the board. A copy of this order shall be sent to the Department of Corrections to be made a matter of permanent record." 15:574.6.
However, if a parole is revoked, "* * * the parolee shall be returned to the institution from which he was paroled and serve the remainder of his sentence as of the date of his release on parole * * *." 15:574.9. In such event, we note, the parolee will not be discharged at the expiration of the time fixed by his initial sentence, but instead at some later datei. e., at the expiration of the actual "maximum" sentence served, not of the earlier date of expiration of the sentence initially imposed on him.
The statutory intent, thus, is that a sentence expires when the prisoner is discharged from state custody and supervision, not when the theoretical date arrives on which the initial sentence would have terminated. Thus, when the convicted person is discharged earlier (as well as later) then the expiration date of the sentence initially sentenced, then the actual maximum sentence is that determined by his date of legal discharge, whether extended through revocation of parole or shortened by law due to "good time" diminution of the initial sentence. It is not until the date of actual discharge that the individual has fully paid his debt to society, insofar as owed because of an offense for which he has been convicted.
We are re-enforced in this interpretation by considering the functional reason for which the five-year cleansing period was first added to our multiple-offender provisions, as re-enacted by Act 45 of 1942.
In the articles published by the Louisiana Law Review to explain the new criminal code and the companion enactments regulating enhanced sentences and paroles, a leading member of the drafting committee stated: "The new [enhanced-sentence] statute is not applicable when a period of more than five years has elapsed between the expiration of the sentence imposed for the last previous felony conviction, and the time of commission of the latest felony. This provision was included in the law because it *315 was felt that if the defendant did not violate the law for a period of five years he was not properly classed as a habitual offender." Wilson, cited footnote 8 above, at 5 La.L.Rev. 61-62.
As summarized by Professor Dale Bennett, noted scholar of Louisiana criminal law: "In addition to providing less drastic penalties for the multiple offender, the 1942 act sought to give the criminal a better chance for rehabilitation by providing that he would not be treated as a habitual offender if he could avoid further felony convictions for a period of five years." 9 La.L.Rev. 271-72 (1949).
(This five-year cleansing period for rehabilitative purposes does not run, for instance, during "any period of penal servitude by a person in a penal institution within or without the state." La.R.S. 15:529.1 C (quoted in full in footnote 4 above.)
In the instant case, the defendant was convicted of attempted murder in 1967, arising out of an accident in 1966. He served his time, received a diminution of his initial sentence due to good behavior, and was finally discharged from any further punishment for the 1966 crime in June of 1970. More than five years elapsed after this discharge, during which (so far as the record shows), he was a law-abiding citizen.
The present offense occurred more than five years after he had served his entire sentence under the 1967 conviction. In his case, the "maximum" sentence expired short of the time initially fixed for the sentence for the first conviction, due to pardon and diminution by law of his initial sentence (just as the "maximum" sentence might have been at a later date under other circumstances, see above).
Therefore, prior to the present offense, more than five years had elapsed after expiration of the maximum sentence served for the first offense. Upon the date he was finally discharged from any further sentence for his first crime, either in custody or under state supervision, he had completely paid his debt to society for that crime.
Since the present offense was committed more than five years after expiration of the maximum sentence served for the defendant's first conviction, he cannot under La.R.S. 15:529.1 C receive an enhanced punishment upon the present conviction as a second offender. The enhanced sentence must therefore be set aside, and the case remanded to the district court for re-sentencing in accordance with law.

II.
With regard to the basic robbery conviction itself, the accused relies only upon Assignment of Error 1 for reversal. This relates to permitting a police officer to testify as to an oral statement by LeDuff, a co-defendant at the trial.[9]
The substantial contention made by Anderson, the present defendant, is that the admission of testimony of this out-of-court statement by a co-defendant denied him his constitutional confrontation (cross-examination) rights as to the veracity of this unsworn statement. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); State v. Herman, 304 So.2d 322 (La.1974).
The co-defendant's statement, while exculpatory to some extent of himself, is allegedly inculpatory as to the present accused. (Neither defendant took the stand to testify at the trial of innocence or guilt.)
The substance of LeDuff's statement to the police witness was that he and Anderson had been playing poker and were in his car about twenty minutes on their way home when stopped by the police. As to a gun found under the driver's seat, he stated he did now know to whom the pistol belonged or how it had gotten under the seat of his automobile.
The vehicle was stopped by the policy shortly (within minutes) after the offense. *316 This robbery was committed when one person (identified as Anderson) came in with a pistol and held up the clerk at a convenience store. Afterwards, the robber hopped into a waiting vehicle, which drove off at high speed.
When the police stopped the vehicle, LeDuff was driving it, with Anderson as his passenger. Proceeds of the robbery were found in a paper bag on the floorboard of the passenger's seat, while a .22 caliber pistol (resembling that used in the robbery) was found under the driver's seat.
Under these circumstances, the incriminating fact resulted from the presence of the pistol in the vehicle occupied by these two defendants so shortly after the robbery, not from any claimed ownership or not of the weapon. No issue is raised as to the admissibility of the testimony itself that the gun was found in the vehicle.
Further, in view of the substantial and uncontradicted testimony that Anderson (not the vehicle's driver) used the pistol in the robbery, it is difficult to find significantly prejudicial as to him any testimony that the weapon did not belong to the driver, who (allegedly) did not know how it arrived under his seat.
That is, had the driver LeDuff himself testified to the same effect as his oral statement given to the officer, cross-examination as to his ownership or knowledge of the weapon could not, it seems to us, have developed any information favorable or unfavorable to the determination of Anderson's guilt. Whether or not LeDuff owned the pistol or knew how and when it had been placed under the driver's seat, was immaterial, under the facts of this case, as to the determination of Anderson's guilt of the crime charged, nor did the information that LeDuff did not claim ownership or knowledge of the gun constitute, under the facts of the case, any significantly prejudicial reflection against Anderson.
The situation is thus distinguishable from that in State v. Herman, 304 So.2d 322 (La.1974). There, the unsworn and uncross-examined out-of-court statement of a co-defendant permitted the trial jury to draw an inference of fact relevant to its consideration of the other defendant's guilt: The latter was thereby prejudiced by the denial of his confrontation rights.
We are inclined to believe that admission of the co-defendant's out-of-court statement was erroneous under Herman. Nevertheless, we find that, if erroneous, its admission was harmless under the facts of this case. La.C.Cr.P. art. 921; cf., Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

Decree
For the reasons assigned, therefore, we affirm the conviction, but we set aside the sentence. We remand the case for re-sentencing consistent with the views expressed herein and in accordance with law.
CONVICTION AFFIRMED, BUT CASE REMANDED FOR RE-SENTENCING.
SANDERS, C. J., concurs in the affirmance of the conviction but otherwise dissents.
SUMMERS, J., concurs in part and dissents in part, for the reasons assigned.
SUMMERS, Justice (concurring in part and dissenting in part).
I agree that the conviction should be affirmed and therefore concur in the result reached by the majority in that case. However, I do not agree with the majority opinion in its interpretation of the Habitual Offender Law, and I therefore dissent from that part of the decree which sets aside the enhanced penalty and remands the case for resentencing.
NOTES
[1] Docket No. 58,911 concerns the robbery prosecution and Docket No. 58,912 concerns the second offender bill.
[2] In brief, the defendant abandoned assignments 2, 3, 4, 7. Assignments 5 and 6 relate to alleged errors in the multiple-offender proceedings. We need not discuss them, since we have determined on another ground that the defendant was incorrectly held to be a second offender.
[3] Assignment 8 is taken from the refusal to grant a motion to acquit the accused of the charge in the enhanced-sentence bill that he was a second offender. Assignment 9 was taken to the denial of a motion in arrest of his adjudication as to a second offender. Assignment 10 is taken in support of his objection at the hearing to evidence showing the prior offense, in the absence of a showing that the maximum sentence for it had expired more than five years before the present offense. Without passing on the technical aspects of the motions used, it suffices to say that, however denominated, they clearly objected on the ground now relied upon on appeal to the defendant receiving an enhanced punishment as a second offender. This sufficiently preserves the issue for appeal. La.C.Cr.P. arts. 841, 844, 920(1).
[4] La.R.S. 15:529.1 C provides that its provisions permitting enhanced sentence upon a subsequent conviction, because of prior offenses, "shall not be applicable in cases where more than five years have elapsed since the expiration of the maximum sentence, or sentences, of the previous conviction, or convictions, and the time of the commission of the last felony for which he has been convicted. In computing the period of time as provided herein, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any of said five year periods."
[5] As enacted at the time of the defendant's imprisonment and discharge, this statute provided: "Every prisoner in the state penitentiary who has been convicted of a felony and sentenced to imprisonment for one year or more may earn a diminution of sentence by good behavior, to be known as `good time'." La.R.S. 15:571.3 (as amended by Act 426 of 1964).
[6] The defendant concedes that, if he were paroled, his original sentence would not have expired until he was finally discharged from state supervision. Further, see below, if he had been paroled and his parole were revoked, his "maximum sentence" would not have expired until some date beyond that originally imposed.
[7] La.R.S. 15:529.1 F provides:

"The certificates of the warden or other chief officer of any state prison, or of the superintendent or other chief officer of any penitentiary of this state or any other state of the United States, or of any foreign country, under the seal of his office, if he has a seal, containing the name of the person imprisoned, the photograph, and the finger prints of the person as they appear in the records of his office, a statement of the court in which a conviction was had, the date and time of sentence, length of time imprisoned, and date of discharge from prison or penitentiary shall be prima facie evidence on the trial of any person for a second and subsequent offense of the imprisonment and of the discharge of the person, either by a pardon or expiration of his sentence as the case may be under the conviction stated and set forth in the certificate."
[8] These two enactments, along with the Louisiana Criminal Code of 1942 (Act 43 of 1942), were component parts of an overall codification and re-enactment of Louisiana criminal and penal statutes. See Wilson, The Louisiana Criminal CodeMaking the Punishment Fit the Criminal, 5 La.L.Rev. 53 (1942).
[9] LeDuff and the present defendant (Anderson) were jointly indicted for the offense. At their joint trial, La.C.Cr.P. art. 704, LeDuff was convicted of simple robbery. So far as the record shows, he did not appeal.