440 So.2d 134 (1983)
STATE of Louisiana
v.
James Craig MOORE.
No. 82-KA-1788.
Supreme Court of Louisiana.
October 19, 1983.
Rehearing Denied November 18, 1983.
*135 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Nathan Stansbury, Dist. Atty., Don Landry, Asst. Dist. Atty., for plaintiff-appellee.
Thomas E. Guilbeau, Lafayette, for defendant-appellant.
LEMMON, Justice.[*]
In this appeal by defendant of his convictions for the attempted forcible rape and attempted second degree murder of a young woman, the principal issue involves the state's introduction of evidence of two unrelated attacks by defendant on other young women.[1] Since the defense raised was clearly that of "mistaken identity", we must decide whether the evidence's relevance and probative value (the tendency to prove identity) was outweighed by the prejudicial effect (the tendency merely to prove "bad character"). See State v. Davis, 389 So.2d 71 (La.1980).
The victim's encounter with defendant occurred as she walked toward her home in Lafayette during the early morning hours of New Year's Day, 1981. She had been with her boyfriend (who at the time of trial was her husband) at a social gathering, but they became engaged in an argument, and she decided to walk home. She selected a well lighted route, walking through the area of Girouard Park near the university campus.
A rust colored Buick Riviera passed her and came to a stop. When the driver got out of the car and started to approach her, she announced that she did not want a ride. The man (whom she later identified in a lineup and at trial as defendant) moved quickly toward her, grabbed her, and smashed her on the head several times with a tire tool.[2] The victim had the presence of mind to gasp and feign unconsciousness, and defendant discontinued the beating.[3] He then pulled her off into some bushes adjacent to the roadway.
As the victim lay helplessly on the ground praying that someone would come upon the scene, defendant placed his hand between her legs and began to unbutton her skirt. She noticed that he had unzipped his trousers *136 and had exposed his penis. She described defendant as "grunting like an animal" while he crouched over her with his penis exposed, touching her perineal area and unbuttoning her dress.
Suddenly an automobile approached and slowed up, whereupon the victim sprang to her feet and ran toward the car, screaming for help. As a matter of fact, the driver had noticed her lying on the ground and had stopped to determine whether she needed assistance. Defendant ran to his car and drove off quickly. The victim asked her rescuer to follow defendant and attempt to determine the license number, but they were unsuccessful. The victim was then taken to the hospital, where she was treated in the emergency room and was interviewed by police.
The investigation eventually focused on defendant, and the police arrested him and searched his house pursuant to warrants. Although the police discovered a burgundy colored Buick Riviera (which had its tire tool missing and a small smudge of blood on the roof) and a white Ford Granada (the type of car used in another recent sexual attack in Girouard Park) at defendant's home, they did not find any other physical evidence linking defendant to the instant offense. Thus, the state's case rested almost entirely on the strength of the victim's identification.[4]
At defendant's trial, defense counsel directed his efforts toward challenging and undermining her positive and unequivocal identification of defendant as her attacker. He focused his cross-examination of the victim on the lighting conditions at the scene and on her opportunity to view her assailant.[5] He even concluded his closing argument by telling the jury that the "true culprit for [the victim's attack] is still somewhere outside. It is not Mr. Moore [defendant]".
It was in this context that the trial judge had to decide whether to permit the state to call two other young women who were assaulted in the early morning hours in the area of Girouard Park by a man whom they would positively identify as the defendant.
Before permitting the state to offer the testimony of the witnesses, the judge conducted a hearing out of the presence of the jury and received evidence of the other incidents.[6] Despite some differences, the other two attacks were essentially similar in most significant aspects. Both of the other attacks were made within a month of the present crime on pretty, young white women in the Girouard Park area in the early morning hours (between 2:00 and 5:00 a.m.). All three incidents displayed a pattern in which defendant prowled about in an automobile during the early morning hours in an area where one might expect to find pretty young "coed types". All three incidents involved the same bizarre behavior, in that defendant exposed his penis during the use of physical violence upon the female victim. All three involved a fondling of the intended victim's legs or thighs.[7]
*137 After deciding to permit the state to offer the testimony of the other two young women, the judge carefully instructed the jury as to the limited purpose of the evidence (to prove identity of defendant as the victim's assailant) before allowing the jury to hear the witnesses. Again, when the prosecutor in closing argument mentioned the other incidents, the judge gave the limiting instruction. The judge again repeated the instruction in charging the jury.
Evidence of other crimes is inadmissible when the only purpose of the evidence is to show the defendant's propensity to violate criminal laws, since the relevancy of such evidence for the purpose of showing that the defendant was the perpetrator is so marginal that its probative value is heavily outweighed by its prejudicial effect. The underlying purpose of a rule excluding such evidence (such as Fed.R.Evid. § 404[b]) is to protect the defendant from undue prejudice resulting from the use of evidence which has only marginal relevance to disputed issues.[8] However, there are exceptions to the general rule of inadmissibility.
The decision in State v. Hatcher, 372 So.2d 1024 (La.1979), sets forth guidelines for determining the admissibility of evidence of other crimes. First, there must be clear and convincing evidence that the defendant committed the other crimes. Second, the other crimes evidence must be substantially relevant for some other purpose than to show the defendant's general criminal character. Third, the other crimes evidence must tend to prove a material fact genuinely at issue. Fourth, the method of commission of both the charged and the uncharged crime must be so distinctively similar that one may logically infer that the same person committed both crimes. Fifth, the probative value of the other crimes evidence must outweigh its prejudicial effect.
In the present case, there was clear and convincing evidence that defendant committed the other crimes. Moreover, the identity of the perpetrator was genuinely at issue, and the other crimes evidence had substantial independent relevance for the purpose of showing the probability that defendant was the perpetrator of the charged crime. Virtually the entire case was based on the victim's identification. The generally unsatisfactory nature of eyewitness identification uncorroborated by physical evidence and the intensity of defense counsel's challenge to the victim's identification revealed plainly that the proffered evidence was introduced for purposes of establishing identity, which was a genuine issue in this case, rather than to show merely that defendant had a "bad character". See State v. Hatcher, above; State v. Ledet, 345 So.2d 474 (La.1977).
The critical areas for determination are the comparison of the distinctive similarities between the crimes and the weighing of the probative value of the proffered evidence against the inherent prejudice. These determinations, which are closely related, must be made on a case by case basis.
Evidence of other crimes may be admitted when the prior crime by the particular defendant is so distinctively similar to the charged crime (especially in terms of time, place and manner of commission) that one may reasonably infer that the same person was the perpetrator. The determination of this standard is essentially a balancing process. The greater the degree of similarity of the offenses, the more the evidence enhances the probability that the same person was the perpetrator, and hence the greater the evidence's probative value, *138 which is to be ultimately weighed against its prejudicial effect.
Thus, the positive identification of a defendant as the perpetrator of a distinctively similar previous crime is often permitted to enhance the otherwise uncorroborated identification of that person as the perpetrator of the charged crime. In such cases, the evidence of the uncharged crime has much higher relevance and far greater probative value than evidence which merely indicates that the defendant has a propensity to engage in all kinds of criminal activity.[9]
The court in determining admissibility must also weigh the incremental probity of the evidence against its inherent prejudice. When "other crimes" evidence has only marginal relevance and therefore only slight probative value, the prejudicial effect is enormously disproportionate.
In this case, the other sexual assaults had significantly similar salient features which gave them the degree of distinctive similarity necessary to enhance the probability that defendant was the perpetrator of all three offenses. All three offenses involved a sex offender's December, 1980 prowling in an automobile in Girouard Park during the early morning hours in search of young white women and his attacking them violently with his penis exposed.[10] The similarities in the method of commission and in the time, place and other circumstances of the crimes are so distinctive that the positive identification of defendant by the victims of the first two crimes greatly enhanced the uncorroborated identification by the victim of the charged crime, thereby giving the evidence extremely high probative value on the only disputed issue in the case. Moreover, the trial judge lessened the prejudicial effect and guarded against jury misuse of the evidence by giving cautionary instructions contemporaneously with the evidence and the closing argument, as well as in his jury charges.[11]
Thus, we conclude that the trial judge did not err in admitting the evidence on the basis that the crime had sufficient distinctive similarities and that the probative value of the challenged evidence's tendency to establish identity outweighed its tendency only to prove "bad character". See State v. Frederick, 340 So.2d 1353 (La.1976).
Therefore, defendant's convictions and sentences are affirmed.
DIXON, C.J., and DENNIS, J., dissent with reasons.
*139 CALOGERO, J., dissents, believing there is merit in Assignment of Errors 2, 3, & 4, all relative to inadmissible other crimes evidence; and will assign reasons.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
Whatever the similarities in these three offenses and not mentioned in the majority opinion (all three offenses were by white men; defendant had access to the two different kinds of cars used; that the offender grunted and seemed to masturbate during the attack) there are so many similarities in sexual offenses of this kind that differences in such offenses escape notice. Genuinely identifying peculiarities are rare.
Regardless of whether the offender in this attempted rape fits the pattern of the other would-be rapist, it was almost a foregone conclusion that the jury would not allow this untried, unpunished would-be rapist of other young women to go free in this trial, regardless of the strength of his defense.
This, I think, is what is meant by "weighing the probative value (of the other crimes evidence) against its prejudicial effect." Cases like this one make it difficult to understand the rule against the use of other-crimes evidence. The more emotional, the more sensational the evidence of the other crimes, the more likely it is to be admitted and approved, regardless of its overwhelming prejudicial impact.
DENNIS, Justice, dissenting.
The prohibition against other crimes evidence takes two forms in the United States. Under the "exclusionary" rule prevailing in Louisiana and the majority of other jurisdictions, all other crimes evidence is excluded unless it is relevant to specified facts and propositions, such as identity, motive, common scheme or plan and knowledge. State v. Kahey, 436 So.2d 475 (La., 1983); State v. Sutfield, 354 So.2d 1334 (La.1978); State v. Hatcher, 372 So.2d 1024 (La.1979); State v. Ledet 345 So.2d 474 (La.1977). Our approach is to be distinguished from the so called "inclusionary" rule of FRE 404(b) which admits all evidence of other crimes relevant to an issue in a trial, except that which tends to prove only criminal disposition. Weinstein and Berger, Weinstein's Evidence v. 2, Section 404(08). Although it may be argued that the decisions are not always affected by the form of the rule, some of the federal circuits apparently view the inclusionary form of Rule 404(b) as mandating a greater emphasis on admitting other crimes evidence than heretofore. In numerous instances, the federal courts simply recite the lists of permissible uses specified in the rule and admit without any analysis of the proffered evidence. Id. n. 13, 14. Although I disagree with the majority opinion's particular application of the established exclusionary approach in this case, I applaud its adherence to our well settled other crimes evidence rules.
In keeping with our general rule of excluding other crimes evidence, except for certain limited purposes, this court has held to be admissible proof of other crimes exhibiting almost the identical modus operandi or system, committed in close proximity in time and place. State v. Jackson, 352 So.2d 195 (La.1977); State v. Jones, 332 So.2d 466 (La.1976); State v. Price, 325 So.2d 780 (La.1976); State v. Vince, 305 So.2d 916 (La.1974); State v. Lawrence, 294 So.2d 476 (La.1974).
In order to be admissible the extraneous offense must meet several tests: (1) there must be clear and convincing evidence of the commission of the other crimes and the defendant's connection therewith; State v. Prieur, 277 So.2d 126 (La.1973); see also, State v. Gaines, 340 So.2d 1294, 1298 (La. 1977) (concurring opinion); McCormick on Evidence, § 190, pp. 451-52 (2d ed. 1972); (2) the modus operandi employed by the defendant in both the charged and the uncharged offenses must be so peculiarly distinctive that one must logically say they are the work of the same person; State v. Jackson, 352 So.2d 195 (La.1977); State v. Lee, 340 So.2d 1339, 1345 (La.1977) (concurring opinion); (3) the other crimes evidence must be substantially relevant for some other purpose than to show a probability *140 that the defendant committed the crime on trial because he is a man of criminal character. State v. Frederick, 340 So.2d 1353 (La.1976); (4) the other crimes evidence must tend to prove a material fact genuinely at issue; State v. Ledet, 345 So.2d 474 (La.1977); (5) the probative value of the extraneous crimes evidence must outweigh its prejudicial effect. State v. Sutfield, 354 So.2d 1334 (La.1978); State v. Jackson, 352 So.2d 195 (La.1977). State v. Hatcher, 372 So.2d 1024 (La.1979).
In the present case the extraneous offenses evidence clearly does not meet all of the tests and, therefore, should have been excluded. The modus operandi employed by the defendant in both the charged and extraneous offenses were not so peculiarly distinctive that one must logically say they are the work of the same person. Different types of automobiles were used, a weapon was used in only one case, and the exposure of an assailant's sexual organ during a sexual attack does not appear to be peculiarly distinctive of one offender.
Consequently, the other crimes evidence also is not substantially relevant for some other purpose than to show a probability that the defendant committed the crime on trial because he is a man of bad character; and the probative value of the extraneous crimes does not outweigh its prejudicial effect. This is because proof of a defendant's other crimes which do not exhibit almost the identical modus operandi as the charged offense are inevitably more probative of defendant's bad character than that the defendant committed the charged offense because it was carried out in a manner peculiarly distinctive to his previous offenses.
I respectfully dissent.
CALOGERO, Justice, dissenting.
I agree with the reasons assigned by Chief Justice Dixon and Justice Dennis respectively, and therefore dissent. I submit additionally the following observations concerning footnote 11 of the majority opinion.
If the author in the majority opinion has found that the charged crime in this case would have been admissible under our jurisprudence in the trial of each of the other two offenses as "other crimes evidence," and assuming that the majority is correct in finding the two other offenses "Prieur admissible" in this trial of the charged crime; then it would be correct to state that it would have been permissible to join the three offenses in a single trial. If reciprocally admissible as other crimes evidence in the event of separate trials, offenses may be joined together in a single trial. State v. Carter, 352 So.2d 607 (La.1977). Footnote 11 of the majority opinion states, however: "It would perhaps have been preferable for the offenses to be joined for a single trial,..." (Emphasis provided.) While I agree that it would have been permissible to join the offenses for trial under the majority's hypothesis, I am not so sure that such joinder would necessarily have been preferable.
In joining two or more independent offenses for trial because they are allegedly each admissible in the trial of the other or others under Prieur and its progeny, the prosecutor obviously gains an advantage. [It is much more likely that he will get one or more convictions of a defendant against whom there has been presented to the jury some evidence of his having committed two or more serious crimes.] On the other hand he also runs a risk, namely, that if the jury convicts on one (or two) charges and acquits on another the appeals court may find itself forced to reverse the conviction. On appeal from the conviction, the appellate court would be required to reverse if that court were to determine that the defendant's connection with the crime of which he was acquitted was not clearly and convincingly proven, a requirement for its admissibility as an "other crime," and correspondingly a requirement if defendant is properly to be tried at one and the same time for two or more distinct and separate offenses.
NOTES
[*] Bailes, J. sitting for Marcus, Justice.
[1] Defendant also challenges the competency of trial counsel, citing counsel's failure to raise the "other crimes" issue by pretrial motion. This complaint is plainly without merit. The issue was properly raised at trial and was properly preserved for review on appeal.

Defendant does not challenge the sufficiency of evidence. La.C.Cr.P. Art. 821. He was sentenced to a total of 70 years imprisonment at hard labor. Defendant has four prior convictions and does not challenge the severity of his sentence.
[2] The injury was so severe as to require stitches and reconstructive surgery.
[3] The victim was a recent college graduate, majoring in psychology. She was in her early 20's at the time of the attack.
[4] Neither the rescuer nor his passenger saw the attacker well enough to identify him.
[5] During the defense case, an investigator was called to testify concerning the lighting conditions in the area in an effort to show that the light was poor and that the victim's opportunity to view her assailant was very limited.
[6] Prior to trial, the prosecutor provided defendant a "Prieur notice", alerting the defense of its intent to offer "other crimes evidence" and setting forth the purpose of offering such evidence. See State v. Prieur, 277 So.2d 126 (La. 1973). Defendant does not challenge the sufficiency of the notice.
[7] There were some dissimilarities. The degree of force used against the victim of the charged offenses was greater than that used in the two earlier incidents. The other victims were handled violently, but defendant did not resort to armed violence.

In the first incident (December 6), defendant grabbed the sleeping victim from a parked car and was grabbing her thighs when her male companion (who had also been asleep) pulled defendant off, allowing her to run away. Defendant stole the female's purse as he fled in a white Ford Granada. (Other evidence showed that type of car at defendant's home.)
In the second incident (December 28), defendant got out of a red colored Riviera, grabbed the victim by the hair and arm, and pulled her down. He removed her underwear and attempted to have intercourse before she convinced him that her parents were home and would be checking on her. Upon her promise to meet him later, he fled, leaving her alone. (She had been trained at a rape seminar not to struggle with potential rapists and to talk to them in an effort to dissuade them from persisting in their attack.)
[8] In Louisiana, La.R.S. 15:481's prohibition against the use of evidence of the defendant's bad character effectively excludes the use of evidence of other crimes except as proof of some independently relevant and material issue other than the defendant's general criminal propensity. State v. Humphrey, 412 So.2d 507 (La.1982).
[9] It has been suggested that the nature of the crime may affect the court's weighing process in determining the requisite relationship between the proffered evidence and a non-propensity issue (such as intent or identity) See 2 J. Weinstein, Evidence § 404[11] (1982). The suggested tendency is that courts admit other crimes more freely in narcotics and sex cases. That tendency in Louisiana in child abuse cases has also been noted. See State v. Germain, 433 So.2d 110 (La.1983).

Nevertheless, we agree with the court's statements in U.S. v. Woods, 484 F.2d 127 (4th Cir.1973), that "[s]imply fitting evidence of this nature into an exception heretofore recognized is, to our minds, too mechanistic an approach" and that "evidence of other offenses may be received, if relevant, for any purpose other than to show a mere propensity or disposition on the part of the defendant to commit the crime, provided that the trial judge may exclude the evidence if its probative value is outweighed by the risk that its admission will create a substantial danger of undue prejudice to the accused." See State v. Humphrey, above.
[10] Another significant consideration in determining the degree of probative value (or the relevance based on similarity of the incidents) is the fact that the perpetrator in all three crimes used either a burgundy colored Buick Riviera or a white Ford Granada, both of which were found at defendant's home.
[11] It would perhaps have been preferable for the offenses to be joined for a single trial, rather than being offered as unjoined "other crimes evidence" to prove identity, in order to prevent the danger that the jury may convict the defendant of the offense charged merely because the jury is convinced that the defendant committed the uncharged crimes, without being convinced beyond a reasonable doubt of his guilt of the charged offense. There is also a danger in some cases that the jury may convict a defendant to prevent his escaping punishment for the uncharged crimes. In this case, however, the trial judge's careful instructions eliminated any significant risk that the jury might misuse the "other crimes evidence" in that fashion.