452 So.2d 737 (1984)
STATE of Louisiana
v.
Robert BAKER.
Nos. 83 KA 1255, 83 KA 1257.
Court of Appeal of Louisiana, First Circuit.
May 30, 1984.
*740 Ossie Brown, Dist. Atty. by Richard Johnson, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
G. Paul Marx, Lafayette, for defendantappellant.
Before SHORTESS, LANIER and CRAIN, JJ.
CRAIN, Judge.
Defendant, Robert Baker, was charged by bill of information filed on March 11, 1982, with ten counts of forgery, in violation of La.R.S. 14:72. Defendant pled not guilty and, after a jury trial, was found guilty as charged on each count. Defendant was subsequently charged and sentenced as a second felony habitual offender under La.R.S. 15:529.1. The court sentenced defendant to be confined at hard labor for ten years on each count, the sentences to be served concurrently with each other but consecutively to a sentence previously imposed and then being served by defendant.
Defendant has appealed, briefing six assignments of error:
1. The court erred in refusing to grant defendant's motions to quash the bill of information based on the lack of a speedy trial.
2. The court erred in its conduct of a hearing to determine the admissibility of other crimes evidence.
3. The court erred by denying defendant due process of law.
4. The court erred in allowing the admission of other crimes evidence.
5. The court erred in permitting a prosecution witness to testify through a narrative method.
6. The court erred in refusing to admonish the jury with respect to prosecutorial statements.
Defendant's two remaining assignments of error were not briefed and are thereby considered abandoned. Rule 2-12.4, Uniform Rules-Courts of Appeal, State of Louisiana. State v. Trevathan, 432 So.2d 355 (La.App. 1st Cir.1983), writ denied, 437 So.2d 1141 (La.1983).

FACTS
During the month of October, 1980, defendant, Robert Baker, forged the name of "Elray Gisclard" to numerous Visa charge card invoices to obtain goods and services from several retail establishments in East Baton Rouge Parish. The forgeries were brought to the attention of Louisiana law enforcement authorities in November of 1980, after defendant made statements to Florida authorities following his arrest in that state for similar offenses involving use of the same credit card.
*741 Defendant was arrested in East Baton Rouge Parish on May 14, 1981, and on June 19, 1981, a bill of information was filed charging defendant with one count of unauthorized use of an access card in violation of La.R.S. 14:67.3. That bill of information was dismissed on October 23, 1981. Defendant was rebilled on March 11, 1982, with the instant ten counts of forgery. Trial on these counts commenced on January 25, 1983, and ended on January 26, 1983.
ASSIGNMENTS OF ERROR NOS. 1 and 3

a) Speedy Trial

In his brief, defendant has combined assignments of error one and three, alleging that the trial court erred in denying his motions to quash the bill of information on the grounds that defendant had been denied a speedy trial and that defendant had been denied due process of law based on prosecutorial vindictiveness. The thrust of defendant's argument focuses on the delay occurring from the time of his initial arrest in May of 1981, until rebilling in March of 1982, on the charges for which he was ultimately tried and convicted.
The right to a speedy trial is a fundamental right guaranteed by both the federal and state constitutions. U.S. Const. amend. VI; La. Const. of 1974, art. 1, sec. 16; State ex rel. Miller v. Craft, 337 So.2d 1191 (La.1976).
The four factors to be considered in determining whether a defendant has been deprived of a speedy trial are: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); State v. Dewey, 408 So.2d 1255 (La.1982).
The initial inquiry is into length of delay, and if the length of delay was such as to be presumptively prejudicial, a further inquiry into the other factors is necessary. Whether the length is presumptively prejudicial depends on the peculiar circumstances of each case. State v. Reaves, 376 So.2d 136 (La.1979).
As noted above, defendant was arrested on May 14, 1981, and charged by bill of information on June 19, 1981. That bill was dismissed on October 23, 1981. Defendant alleges that dismissal of the original bill was due to his failure to enter into a plea bargain with the state. This assertion is supported by the record.
Defendant filed a motion for a speedy trial based on La.C.Cr.P. art. 701 on February 22, 1982, at which time he did not face formal charges in East Baton Rouge Parish, although he remained incarcerated.[1] Disposition of that motion does not appear of record although defendant was subsequently rebilled in East Baton Rouge Parish on March 11, 1982, and thereafter remanded to Louisiana State Penitentiary at Angola to begin serving a sentence imposed by the Fifteenth Judicial District Court on March 10, 1982.
The length of delay in this instance is well within the prescriptive periods. The length of delay from billing on the charges for which defendant was tried and convicted to trial was from March 11, 1982 until January 25, 1983. This delay is not presumptively prejudicial. The delay from dismissal of the original charges until rebilling was precipitated by pending charges other than those for which defendant was tried in this case. Consequently, that delay creates no presumptive prejudice.
In any event, analysis of the other factors necessary to finding a denial of a right to a speedy trial does not provide defendant any relief.
*742 Although the record before us is not complete as to the procedural history of each of the forgery charges defendant faced throughout the State of Louisiana during the time in question, it appears that the very existence of several pending prosecutions attributed to much of the delay. There is no indication that the state was in bad faith or deliberately delayed defendant's prosecution. The numerous forgery counts on which defendant was eventually charged, tried, and convicted would seem to require much investigation to fully develop. Under the circumstances, which included an aborted attempt at plea bargaining negotiations, the reasons for the delay are justifiable.
Additionally, the defendant did not file a motion in court asserting his right to a speedy trial until four months after the original bill of information had been dismissed. By that time, the major portions of the delay had occurred.
Finally, defendant does not allege any actual prejudice other than marital discord and anxiety due to uncertainty. Defendant's pre-trial incarceration from March 10, 1982, to the time of trial was based on a sentence imposed by the Fifteenth Judicial District Court. The reason for his incarceration from October 30, 1981, to March 10, 1982, is not fully explained by the record but appears to have been based on charges pending in the Fifteenth Judicial District. Moreover, defendant's ability to adequately prepare his defense was not impaired.
In sum, we do not consider that defendant was deprived of his constitutional right to a speedy trial. Hence, the trial judge did not err in denying defendant's motions to quash on that basis.

b) Prosecutorial Vindictiveness

Defendant also sought relief on the independent ground of alleged prosecutorial vindictiveness stemming from the prosecutor's rebilling on more serious counts following defendant's failure to enter into a plea bargain on the original bill of information.
In Bordenkircher v. Hayes, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the Supreme Court for the first time considered an allegation of vindictiveness that arose in a pretrial setting.[2] In that case, the Court held that the due process clause did not prohibit a prosecutor, as in the instant case, from carrying out a threat made during plea negotiations to bring additional charges against an accused who refused to plead guilty to the offense with which he was originally charged. The Court noted that by tolerating and encouraging the negotiating of pleas it had accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forego his constitutional right to stand trial. The Court concluded:
We hold only that the course of conduct engaged in by the prosecutor in this case, which no more than openly presented the defendant with the unpleasant alternatives of foregoing trial or facing charges on which he was plainly subject to prosecution, did not violate the Due Process Clause of the Fourteenth Amendment. 98 S.Ct. at 669.
Additionally, the validity of a pretrial charging decision must be measured against the broad discretion held by the prosecutor to select the charges against an accused. In State v. Juluke, 374 So.2d 1259 (La.1979), the Court noted that forging of a signature to a credit slip for merchandise, with the intent to defraud, describes conduct which if proved would be criminal under either La.R.S. 14:72 (forgery) or 14:67.3 (unauthorized use of access card). The Court noted that it is within the discretion provided the district attorney by La.R.S. 14:4(1) to charge defendant under the general forgery statute in such a case. Accordingly, a presumption of prosecutorial vindictiveness in this case is not warranted.
*743 Assignments of error numbers one and three lack merit.
ASSIGNMENT OF ERROR NO. 2
Defendant alleges that the trial court erred in its conduct and disposition of a hearing to determine the admissibility of other crimes evidence. It is not disputed that defendant received written notice, some nine months in advance of trial, that the prosecution would seek to introduce evidence of other crimes within the scope of La.R.S. 15:445 and 446. The hearing at issue was conducted before the trial judge on April 20, 1982. Prior to that hearing date, defense counsel had received a transcript of statements made by defendant to Florida law enforcement authorities and a detailed description of evidence in possession of the prosecutor for the Fifteenth Judicial District Court bearing on offenses charged in that district.[3] The only witness presented at the hearing was an assistant district attorney from Lafayette Parish, who summarized the other crimes evidence sought to be introduced at trial.
In State v. Prieur, 277 So.2d 126 (La. 1973), the court considered the constitutional problems associated with the admission of evidence of other criminal conduct by the defendant and held that, where such evidence is sought to be admitted, defendant must be given particularized pre-trial notice that such evidence will be introduced, so that he may have an opportunity to defend against it.[4] Further, the trial judge must make a determination, outside the presence of the jury, as to whether the evidence complies with the tests established by our courts for the admissibility of other crimes evidence.
In the present case, the pre-trial notice required by Prieur was given to defendant, and defendant did have an opportunity to present evidence rebutting the admissibility of the evidence of his past criminal conduct. We are satisfied that the testimony of the assistant district attorney, coupled with the transcribed Florida tapes, although hearsay, adequately informed defendant of the nature and factual content of the other crimes evidence. Moreover, the testimony at trial of a Lafayette eyewitness concerning a prior offense conforms substantially to the details of the offenses as described by the assistant district attorney. See, State v. Hatcher, 372 So.2d 1024 (La.1979).[5]
This mode of presentation also afforded the trial judge a sufficient basis from which he could rule on admissibility with respect to the general exclusionary rule of other crimes evidence. Although the trial court's determination on the issue of admissibility was made piecemeal over a period of several months, the ruling was made outside the presence of the jury, prior to introduction at trial of any other crimes evidence. Here, defense counsel generally refers to the timing of the trial court's rulings without having sought a continuance or alleging specific facts to show prejudice to the defendant. On this bare allegation, we cannot conclude that the trial judge abused his discretion. State v. Lukefahr, 363 So.2d 661 (La.1978), cert. denied, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979).
ASSIGNMENT OF ERROR NO. 4
Defendant alleges that the trial court erred in allowing the state's introduction of evidence of his conviction of forgery in the Fifteenth Judicial District, Lafayette Parish, and of inculpatory statements made by *744 defendant to Florida law enforcement authorities.[6]
Evidence of other crimes is inadmissible when the only purpose of the evidence is to show the defendant's propensity to violate criminal law. However, there are exceptions to the general rule of inadmissibility. Aside from related offenses admissible as part of the res gestae and convictions admissible for impeachment purposes, Louisiana statutes provide for three instances when other crimes evidence is "substantially relevant" so as to qualify as an exception to the general rule of exclusion: acts relevant to show intent, knowledge, or system. La.R.S. 15:445, 446. Admission of another crime committed by the same "system" as the offense charged might also be relevant to show the identity of the defendant as the offender. State v. Kahey, 436 So.2d 475, 487; State v. Talbert, 416 So.2d 97 (La.1982).
The decisions of State v. Moore, 440 So.2d 134 (La.1983), State v. Kahey and State v. Hatcher, set forth guidelines for determining the admissibility of other crimes evidence. First, there must be clear and convincing evidence that the defendant committed the other crimes. Second, the other crimes evidence must be substantially relevant for some other purpose than to show defendant's general criminal character. Third, the other crimes evidence must tend to prove a material fact genuinely at issue. Fourth, the method of commission of both the charged and uncharged crime must be so distinctly similar that one may logically infer that the same person committed both crimes. Fifth, the probative value of other crimes evidence must outweigh its prejudicial effect. State v. Moore, 440 So.2d at 137.
In the instant case, there was clear and convincing evidence that defendant committed the other crimes. The identity of the perpetrator was genuinely at issue. The thrust of the defense was based on the identity of the individual(s) who had forged the instant charge slips. Defense counsel focused his attack on the generally weak nature of eyewitness identification and on the fallibility of expert handwriting analysis as it relates to identifying authorship. State v. Ledet, 345 So.2d 474 (La.1977). The other crimes evidence had substantial independent relevance for the purpose of identifying the defendant as the perpetrator of the charged crime.
Application of the fourth and fifth steps in the admissibility analysis are closely related and must be made on a case-by-case basis. The greater the degree of similarity of the offenses, the more the evidence enhances the probability that the same person was the perpetrator of each offense and hence the greater the evidence's probative value. The probative value is to be ultimately weighed against its prejudicial effect. State v. Moore, 440 So.2d at 137.
In this case, the other forgeries had significantly similar salient features which gave them the degree of distinctive similarity necessary to enhance the probability that defendant was the perpetrator of all the offenses.[7] In addition, the trial judge viewed the Baton Rouge offenses as one portion of a larger scheme to use the Gisclard credit card in a variety of locations. The similarities in the method of *745 commission and other circumstances of the crimes are distinctive so that the strong positive identification of the Lafayette eyewitnesses, coupled with the identification by the Florida law enforcement officer, greatly enhanced the identification by the East Baton Rouge eyewitnesses and expert witness presented with respect to the instant charges. The trial judge did not abuse his discretion in finding that the probative value exceeded the prejudicial effect of the admission of the evidence of other crimes. Moreover the trial court lessened the prejudicial effect and guarded against jury misuse of evidence by giving cautionary instructions at closing argument.[8]
Thus, we conclude that the trial judge did not err in admitting the evidence.
ASSIGNMENT OF ERROR NO. 5
Defendant alleges that the trial court erred by permitting the state's handwriting expert witness to testify through a narrative method.
The trial court is vested with sound discretion with regard to control of examination of a witness, including the use of narrative testimony. La.R.S. 15:275; State v. Peters, 302 So.2d 888 (La.1974), cert. denied, 423 U.S. 878, 96 S.Ct. 151, 46 L.Ed.2d 111 (1975). A ruling thereon will not be disturbed absent a showing of abuse of discretion. State v. Carter, 363 So.2d 893 (La.1978). We find no showing of abuse herein.
Further, defendant failed to comply with the requirements of contemporaneous objection as required by La.C.Cr.P. art. 841. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. Defendant's assertion that he was unable to object is unfounded.
Accordingly, this assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 6
Defendant alleges that the trial court erred by failing to sufficiently admonish the jury with respect to a statement made during the state's rebuttal closing argument.
In pertinent part, the prosecutor stated:
[Y]ou may come away with and frequently people who serve as jurors do is that attorneys are paid liars.
After defense counsel's objection, the trial judge did not make a precise ruling but did caution the jury as follows:
I presume that this was said in spirit, not of complete seriousness. And the jury, I hope took it that way.
La.C.Cr.P. art. 774, which defines the scope of closing argument, proscribes as particularly unwanted comments by the prosecutor referring to matters allegedly within his personal knowledge, but not in evidence. However, not every remark of this type will warrant reversal. La.C.Cr.P. art. 921. To the extent that the prosecutor's knowledge concerning what jurors might perceive as an attorney's role at trial was without foundation and outside the record, the same was irrelevant and improper argument. But, before a verdict will be overturned on the basis of improper argument, this court must be thoroughly convinced that the jury was influenced by the remarks and that the remarks contributed to the verdict. State v. Carthan, 377 So.2d 308 (La.1979). We find the argument did not prejudice the defendant. Therefore this assignment of error also lacks merit.
Defendant argues an additional allegation of error which appears for the first time in his brief. Since this allegation, if proved, would be error patent on the face of the record under La.C.Cr.P. art. 920, we find it necessary to review this additional allegation.[9]
In substance, defendant alleges that it was error to have sentenced him as a second *746 felony offender under La.R.S. 15:529.1. Defendant contends that the sentence was improper on the record submitted because it was not demonstrated that the five year cleansing period of La.R.S. 15:529.1(C) could be avoided.[10]
Defendant pled nolo contendere in Hamilton County, Ohio, on January 9, 1974, to a charge of receiving stolen goods valued at $1,000.00.[11] He was paroled to Louisiana from prison in Ohio on December 24, 1974, and received a final discharge from parole on February 27, 1976. The instant offenses were committed by defendant on October 7 and 8 of 1980.
Defendant contends that the five year cleansing period should commence from December 24, 1974, rather than February 27, 1976. In State v. Anderson, 349 So.2d 311 (La.1977), the court noted that the statutory intent of the habitual offender law is that a sentence expires when the prisoner is discharged from state custody and supervision. Moreover, La.R.S. 15:574.7(A) provides that each parolee shall remain in the legal custody of the institution from which he was paroled.
This line of analysis was applied in State v. Vincent, 387 So.2d 1097 (La.1980), where the court equated the date of discharge from parole with the expiration of maximum sentence for defendant's last prior felony conviction. Following these guidelines, we find that the state met its burden of proving that more than five years had not elapsed since the expiration of the maximum sentence for defendant's last prior felony conviction (February 27, 1976) and the time of commission of the felony for which he was convicted herein (October 7 and 8 of 1980).
The trial judge did not err on that basis in finding defendant to be an habitual offender. This allegation of error, accordingly, is without merit.
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] The basis of defendant's continued incarceration after the formal charges were dismissed in October of 1981 is not definitely revealed by the record; however, he had been formally charged in the Fifteenth Judicial District, Lafayette Parish, with numerous counts of forgery in December of 1980, which charges were still pending during this period. The circumstances under which East Baton Rouge Parish officers took custody of defendant on May 14, 1981, are not revealed by the record. However, the record does reveal that defendant had pled guilty to a similar charge in Ascension Parish on May 13 or 14, 1981.
[2] But cf. Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); North Carolina v. Pearce, 395 U.S. 656, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).
[3] In fact, retained counsel for defendant was the same for both the instant case and the Lafayette Parish prosecution, which was resolved by plea bargain.
[4] The only recognized exceptions to this notice requirement are offenses which form part of the res gestae and convictions admissible for impeachment purposes.
[5] A rehearing was granted in Hatcher to reconsider the defendant's assertion that the trial court erred in allowing introduction of other crimes evidence. The rehearing did not disturb procedural considerations addressed in the original opinion.
[6] The Lafayette conviction involved defendant's forging the name of "Elray Gisclard" to various credit purchases during the period which encompassed the time frame involved in this case, using the same VISA account as that used in the instant offenses.

The statements to Florida authorities admitted possession of a VISA credit account card and use of the name of Elray Gisclard during the period encompassing the time frame involved in this case.
Furthermore, defense counsel chose to admit the entire statement, which further alluded to criminal conduct in Florida, rather than limiting the admission to those portions which related more directly to commission of the instant offenses.
[7] Similarities of the various offenses include use of the same credit card; use of the same name as signatory to each charge slip; similar writing style of the signatures (per expert witness); and close proximity in times of occurrence (October through early November of 1980).
[8] Defense counsel declined the opportunity of having cautionary instructions given contemporaneously with the introduction of the evidence.
[9] In State v. Jarreau, 444 So.2d 340 (La.App. 1st Cir.1983), Judge Cole declined to review two assignments not formally raised citing La.C. Cr.P. arts. 844 and 920.
[10] La.R.S. 15:529.1(C) provides:

This Section shall not be applicable in cases where more than five years have elapsed since the expiration of the maximum sentence, or sentences, of the previous conviction, or convictions, and the time of the commission of the last felony for which he has been convicted. In computing the period of time as provided herein, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any of said five year periods.
[11] La.C.Cr.P. art. 552(4) provides in pertinent part that "[a] sentence imposed upon a plea of nolo contendere is a conviction and may be considered as a prior conviction and provide a basis for a prosecution or sentencing under laws pertaining to multiple offenses".