694 So.2d 351 (1996)
STATE of Louisiana
v.
Milton J. BALSER.
No. 96-KA-443.
Court of Appeal of Louisiana, Fifth Circuit.
November 14, 1996.
Linda Davis-Short, Staff Appellate Counsel, 24th Judicial District, Indigent Defender Board, Gretna, for Appellant.
Jack M. Capella, District Attorney, Terry M. Boudreaux, Assistant District Attorney, Louise Korns, of counsel of the District Attorney, *352 24th Judicial District, Parish of Jefferson, Gretna, for Appellee.
Before GAUDIN, C.J., and WICKER and DALEY, JJ.
WICKER, Judge.
Milton J. Balser appeals his conviction as a second-felony multiple offender and the resulting sentence of 36 years. He contends that the sentence is excessive and that there are patent errors which require correction. We reverse the sentence and remand with orders.
On January 26, 1995 Balser was charged by bill of information with purse snatching, a violation of La.R.S. 14:65.1. Defendant pleaded not guilty and underwent a trial by jury, which returned a verdict of guilty as charged on June 22, 1995. Defendant filed a motion to set aside the jury verdict, which was denied. On July 13, 1995 the court sentenced defendant to serve 18 years at hard labor. Defense counsel gave oral notice of his intention to file a motion to reconsider sentence. He filed a motion for appeal on July 13, 1995 and the motion was granted on July 14, 1995.
On July 20, 1995, the State filed a multiple offender bill of information, alleging defendant to be a second felony offender. Defendant was arraigned on the multiple bill on September 28, 1995, and denied the allegations in the bill. A multiple bill hearing was held on March 7, 1996, after which the court adjudicated defendant an habitual offender. On April 18, 1996, the court vacated defendant's original sentence and sentenced defendant under La.R.S. 15:529.1 to serve 36 years at hard labor, with credit for time served.

FACTS
At about 8:00 p.m. on January 7, 1995, Mollie Mitchell arrived at the Schwegmann Supermarket at Veterans Boulevard and Division Street in Metairie. She was accompanied by her husband, Jack Mitchell, and their three daughters. Mr. Mitchell parked their vehicle in the store parking lot and Mrs. Mitchell exited with their six-year-old twins. Mrs. Mitchell and the two older girls then walked toward the store as Mr. Mitchell placed their 20-month-old daughter in a grocery cart.
When Mrs. Mitchell arrived at the store's front entrance, defendant approached her from the front and grabbed the purse she wore on her shoulder. Mrs. Mitchell held on to the purse, and defendant struck her and shoved her. The purse strap broke, and defendant took the purse and fled on foot. Mrs. Mitchell yelled to her husband, "Jack, he's got my purse." Mr. Mitchell spotted defendant running toward the back of the Schwegmann building, and he took off in pursuit.
Joseph Stein, who was also in the parking lot at the time, witnessed the incident and joined in the chase. When Mr. Mitchell drew within three or four feet of defendant, defendant dropped the victim's purse. The contents of the purse spilled onto the ground, and Mr. Mitchell stopped to collect them. Mr. Stein continued the chase. Sheriff's deputies were called to the scene of the offense, and Mrs. Mitchell gave them a description of the perpetrator.
Defendant ran into the back yard of a residence two blocks from the scene of the offense, and he was forced to stop when he was unable to climb over a fence. Mr. Stein attempted to detain defendant, and the two men struggled. The resident of the home called the sheriff's department to report that two men were fighting in her yard. Deputy Eugene Morse arrived at the residence to find Stein and defendant still engaged in a struggle. Stein reported that defendant had just committed a purse snatching, and defendant denied the allegation.
Deputy Morse received a description of the purse snatcher over the police radio, and noted that defendant matched the description. Morse radioed officers at the scene of the crime to request that they bring a witness to the residence for a possible identification. In response, deputies accompanied Mr. Mitchell to the place where defendant was held. Mr. Mitchell positively identified defendant as the perpetrator. Defendant was placed under arrest. At trial, Mr. Mitchell, Mrs. Mitchell, and Mr. Stein all positively *353 identified defendant as the man who snatched Mrs. Mitchell's purse.

ISSUES ON APPEAL
On appeal defendant does not challenge his conviction, but only his sentence on the multiple offender status. He asserts the sentence is excessive and that the trial court committed patent error in at least one respect. We shall not address these assignments at length, however, because our review of the record establishes that the habitual offender proceeding was defective and the sentence enhancement thereunder must be reversed.
When reviewing records we are required to evaluate the sufficiency of the evidence, whether or not that is an error assigned by the appellant. State v. Raymo, 419 So.2d 858, 861 (La.1982). That evaluation discloses a defect which requires us to reverse the sentence and remand the case. In examining the transcript of the habitual offender proceeding, we find the State failed to prove that the predicate conviction fell within ten years of defendant's discharge from his previous sentence, as required by La.R.S. 15:529.1(C). That statute provides:
This Section [setting out the Habitual Offender Law] shall not be applicable in cases where more than ten years have elapsed since the expiration of the maximum sentence or sentences of the previous conviction or convictions, or adjudication or adjudications of delinquency, and the time of the commission of the last felony for which he has been convicted. In computing the period of time as provided herein, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any of said ten-year periods.
La.R.S. 15:529.1(F) states that the State may present, as prima facie evidence of the defendant's imprisonment and discharge, a certificate of the chief officer of a prison or jail or of a clerk of court, containing the name of the person imprisoned, the photograph, and the fingerprints of the person as they appear in the records of his office, a statement of the court in which a conviction was had, the date and time of sentence, length of time imprisoned, and date of discharge from prison or penitentiary.
"The `cleansing period' begins to run from the date that defendant is actually discharged from state custody and supervision.... Thus, evidence of the date of discharge, as provided in La.R.S. 15:529.1(F), is essential to the case...." State v. Metoyer, 612 So.2d 755, 758 (La.App. 5 Cir.1992). The cleansing period does not commence at the end of the imposed sentence, but on the date of the individual's actual discharge from state supervision or custody. State ex rel. Wilson v. Maggio, 422 So.2d 1121 (La.1982); State v. Anderson, 349 So.2d 311, 314-315 (La.1977); State v. Serio, 94-131 (La.App. 5 Cir. 6/30/94); 641 So.2d 604, writs denied, 94-2025 (La.12/16/94); 648 So.2d 388. Discharge from supervision can take place (as it apparently did in defendant's case) earlier than the theoretical date on which the initial sentence would have ended, because of a pardon, commutation or good time credit. It can also take place later than the initial termination date, as when there is a parole revocation.
Defendant was convicted of the alleged predicate felony, manslaughter, on January 22, 1980, fifteen years prior to the commission of the instant offense. The court sentenced defendant to serve 21 years on the manslaughter conviction. The documents introduced to support the predicate conviction include certified copies of the bill of information, guilty plea transcript, sentencing minute entry, commitment, and fingerprints. None of these documents shows when defendant was discharged on the manslaughter charge. The state also introduced defendant's rap sheet, containing an entry for the homicide arrest. The rap sheet, however, contains no information regarding the dates of conviction or release. The transcript does not show that the state orally alleged a date on which defendant was discharged on the predicate offense.
In short, there appears to be nothing in the record to prove that the commission of the current charge falls within 10 years of defendant's discharge for the predicate felony. Because the State did not submit sufficient *354 evidence to prove the 10-year cleansing period, the manslaughter conviction cannot be used as a predicate for the second felony offender charge.
Double jeopardy principles are inapplicable to sentence enhancement proceedings. State v. Dorthey, 623 So.2d 1276, 1279 (La.1993). Therefore, the State may retry the multiple bill if able to cure the noted defect. State v. Stewart, 27,049 (La.App. 2 Cir. 5/10/95); 656 So.2d 677, 683, writs denied, 95-1764 and 95-1768 (La.12/8/95); 664 So.2d. 420. Accordingly, we reverse the sentence and remand the matter. See State v. Payne, 586 So.2d 652, 656 (La.App. 5 Cir. 1991). If the defect cannot be cured, the court must resentence defendant on the purse-snatching conviction.
Because the case must be remanded for resentencing, we deem it appropriate to mention other errors to avoid repetition of them on remand.
In his first assignment of error, defendant asserts the trial court erred in imposing an excessive sentence on the multiple offender status and that the trial court failed to follow the sentencing provisions of La. Code Crim.P.Art. 894.1. Defendant would have been procedurally barred from challenging his sentence on appeal, however, because he failed to make a proper motion for reconsideration under La.Code Crim.P.Art. 881.1. Although defendant filed an oral motion to reconsider sentence at the time he was initially sentenced, he did not make a timely objection at his multiple bill sentencing. Nor did he file a written motion. Defendants who fail to file the proper motion to reconsider sentence are precluded from raising on appeal issues regarding their sentences. State v. Holmes, 94-907 (La.App. 5 Cir. 3/15/95); 653 So.2d 642. See also, State v. Mims, 619 So.2d 1059 (La.1993).
In his second assignment of error, defendant correctly asserted that the trial court erred in failing to instruct him at the time of sentencing of the prescriptive period for post-conviction relief. La.Code Crim.P.Art. 930.8 dictates that, except under certain limited circumstances, a defendant must file his application for post conviction relief within three years after his judgment of conviction. Section (C) of that article provides: "At the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post conviction relief." Defendant's sentencing transcript does not show that he was so informed.
Defendant also assigned any and all errors patent on the face of the record. Our review revealed several errors patent, in that the trial court failed to comply with various provisions regarding information to be provided to the defendant at the time of sentencing, etc.
First, the court failed to stipulate that the sentence would be without benefit of probation or suspension of sentence, La.R.S. 15:529.1(G). Since the trial court did not affirmatively suspend any portion of the sentence or impose any probationary period, however, there was substantial compliance with the sentencing directives of the multiple offender statute. State v. Washington, 563 So.2d 530, 533 (La.App. 5 Cir.1990).
In addition, the trial court failed to advise defendant of the provisions of La.Code Crim. P.Art. 894.1(D), which became effective August 15, 1995. Subsection (D) requires the sentencing court to advise the offender in open court, immediately following imposition of sentence, of various matters relating to length of the sentence: whether "good time" diminution is applicable, whether the sentence was enhanced for any reason, the prospective release date if "good time" is applicable, whether the offender is eligible for parole and, if so, the prospective parole eligibility date.
We note further that defendant erred in filing his motion for appeal prematurely, but that defect was cured by the trial court's imposition of sentence on the multiple bill.
For the foregoing reasons, defendant's sentence as an habitual offender is reversed. The case is remanded for resentencing and/or rehearing of the multiple offender proceeding, in accordance with the views expressed in this opinion.
*355 CONVICTION AFFIRMED, SENTENCE VACATED, AND CASE REMANDED.