637 So.2d 709 (1994)
STATE of Louisiana
v.
Mark Anthony RICHARDSON.
No. KA 91 2339.
Court of Appeal of Louisiana, First Circuit.
May 20, 1994.
*711 Bernard Boudreaux, James R. McClelland, Dist. Attorney's Office, Franklin, for plaintiff-appellee State.
Don J. Hernandez, Indigent Defender Board, Franklin, for defendant-appellant Mark Anthony Richardson.
Before CARTER, GONZALES and WHIPPLE, JJ.
WHIPPLE, Judge.
The defendant, Mark Anthony Richardson, was charged by bill of information with armed robbery, a violation of LSA-R.S. 14:64.[1] The defendant pled not guilty and, after trial by jury, was found guilty as charged. The defendant was adjudicated a third felony offender and sentenced to 198 years imprisonment at hard labor. The defendant appealed, urging the following assignments of error:
1. The trial court erred in quashing the defendant's motion and order to issue subpoenas for certain jurors to testify at a hearing on defendant's motion for a new trial based on juror misconduct.
2. The trial court erred in failing to grant an evidentiary hearing on well-pled allegations of juror misconduct.
3. The trial court erred in sentencing the defendant as a third offender under LSA-R.S. 15:529.1 in that one of the predicate offense sentences was set aside, and therefore, not reliable.
4. The trial court erred in denying defendant's motion for a new trial.
5. The trial court erred in denying defendant's motion to quash the habitual offender bill of information in that the prescriptive period had run on one of the predicate offenses.
6. The trial court erred in denying defendant's motion for mistrial brought about by the defendant having been escorted into *712 the courtroom in full view of jurors as he was handcuffed and shackled.
7. The trial court erred in refusing to allow defense counsel to voir dire juror Estelle Westmoreland about seeing defendant in shackles and handcuffs.
8. The trial court erred in denying defendant's challenge for cause on juror Estelle Westmoreland because the defendant was denied full voir dire regarding prejudice.
9. The trial court erred in denying defendant's challenge for cause on juror Don Price as he was related to the prosecutor by marriage.
10. The trial court erred in refusing to give a requested instruction on identification.
11. The trial court had no authority to sit as a judge in this case because the trial judge was not a duly elected and commissioned judge pursuant to state or federal law.
The defendant failed to brief assignments of error numbers six, nine, and ten; therefore, these assignments are considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.
On December 29, 1989, the defendant attacked the victim, Reginald Simmons, a taxi driver, after riding in his taxi. After stabbing the victim numerous times with a screwdriver, the defendant took the victim's money. The defendant subsequently was arrested for the crime after being identified by the victim.

ASSIGNMENTS OF ERROR NUMBERS ONE, TWO AND FOUR

(Assignments of Error Nos. 1, 2 & 3 in Defendant's Brief)
In these assignments of error, the defendant contends that the trial court erred in failing to grant an evidentiary hearing on his well-pled allegations of juror misconduct; the trial court erred in quashing the defendant's motion and order to issue subpoenas for certain jurors to testify at a hearing on defendant's motion for a new trial based on juror misconduct; and the trial court erred in denying his motion for a new trial. Defendant argues that, although the trial court gave an instruction to the jury that during deliberations they were not to consider the fact that the defendant did not testify, the jury nevertheless considered his failure to testify.
Louisiana Code of Evidence article 606(B) provides:
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether any outside influence was improperly brought to bear upon any juror, and, in criminal cases only, whether extraneous prejudicial information was improperly brought to the jury's attention. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.
This article clarifies the previous jury shield law but does not change the requirements for overcoming the prohibition against juror testimony. State v. Harris, 597 So.2d 163, 165 (La.App. 2nd Cir.1992). The prohibition contained in article 606(B), and previously set forth in LSA-R.S. 15:470, is intended to preserve the finality of jury verdicts and the confidentiality of discussions among jurors. See State v. Duncan, 563 So.2d 1269, 1272 (La.App. 1st Cir.1990). However, the jurisprudence has established that the prohibition against juror testimony is not absolute and must yield to a substantial showing that the defendant was deprived of his constitutional rights. Well-pleaded allegations of prejudicial juror misconduct violating a defendant's constitutional rights will require an evidentiary hearing at which jurors shall testify. Duncan, 563 So.2d at 1272. Unless such pleadings are made with particularity, jury members are not competent to testify. Harris, 597 So.2d at 165.
*713 In the instant case, the defendant initially failed to meet the requirement of specificity in his pleadings. On September 27, 1990, the defendant filed his original motion for new trial in which he alleged that "a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment" and that "the ends of justice would be served by the granting of a new trial." On October 18, 1990, the defendant amended his motion for new trial by adding that the defect was "in the nature of juror misconduct, specifically, defendant has evidence that will prove that members of the jury ... failed or refused to follow the instructions given them by the trial court." The defendant further asserted that this misconduct caused at least one juror to change his or her verdict from not guilty to guilty. The defendant did not set forth any law or the specific constitutional rights which he claims were violated; rather, he merely stated that his constitutional rights guaranteed under the federal and state constitutions were violated.
On February 27, 1991, defendant filed a "Motion to Issue Subpoena's [sic]" to six of the jurors from his trial. Four affidavits were attached to the motion. One affidavit was from the defense counsel who assisted at defendant's trial; the other three affidavits were from jurors wherein they stated that the jury in the defendant's trial discussed during their deliberations the fact that the defendant did not testify. The jurors further stated in their affidavits that they felt that the defendant's failure to testify was a significant factor in the conviction of the defendant. The defendant's motion to issue subpoenas was denied by the trial court.
At the hearing on the motion for new trial, the trial court noted that it had reviewed the affidavits filed by defendant but that it was of the opinion that the alleged violation did not "rise to the level which permits inquiry into the jury's mental processes." The trial court then denied defendant's motion for a new trial.
The pleadings filed by defendant did not meet the requirements of specificity. Defendant's complaints did become more specific upon his filing of the affidavits. However, none of the complaints set forth by the defendant allege juror misconduct in the nature of constitutional violations with sufficient particularity to require or allow members of the jury to testify. Consequently, we find that the trial court correctly denied the defendant's motion for a new trial and request for an evidentiary hearing. We find that the defendant failed to present a substantial claim that his constitutional rights were violated. These assignments of error are without merit.

ASSIGNMENTS OF ERROR NUMBERS THREE AND FIVE

(Assignment of Error No. 6 in Defendant's Brief)
The defendant contends in these assignments of error that the trial court erred in sentencing him as a third offender under LSA-R.S. 15:529.1 in that one of the predicate offense sentences was set aside and, therefore, not reliable. The defendant also argues that the trial court erred in denying his motion to quash the habitual offender bill of information in that the prescriptive period had run on one of the predicate offenses.
In the habitual offender bill of information, the state alleged that, in addition to being convicted of the instant offense of armed robbery on September 13, 1990, the defendant also had been convicted on October 23, 1985, of illegal possession of stolen things having a value of over $500.00 and possession of cocaine. The defendant was also convicted on July 15, 1980, of two counts of simple burglary of an inhabited dwelling. Testimony and exhibits introduced by the state at the habitual offender hearing established that, on October 23, 1985, the defendant pled guilty to illegal possession of stolen things valued at over $500.00 and possession of cocaine in the Twenty-third Judicial District Court; and that the court had sentenced him to serve a term of five years at hard labor on the first count and two years at hard labor on the second count, to be served concurrently. Records from the Department of Corrections indicate that defendant was released from prison on these convictions on May 14, 1988, *714 and was to remain under parole supervision until June 12, 1990. On July 15, 1980, defendant pled guilty to two counts of simple burglary of an inhabited dwelling in the Orleans Parish Criminal District Court for offenses which occurred on March 5 and 11, 1980, and was sentenced to four years at hard labor without benefit of parole, probation, or suspension of sentence for the first year on each count. These sentences were ordered to be served concurrently. Subsequently, defendant was adjudicated to be a second felony habitual offender. Records from the Department of Corrections indicate that defendant was given a full-term release from custody on March 3, 1984.
Records from defendant's most recent convictions indicate that he committed the instant offense of armed robbery on December 29, 1989. It is on this recent armed robbery conviction that the state sought to have defendant sentenced as a third felony habitual offender.
Louisiana Revised Statute 15:529.1(C) states:
This Section shall not be applicable in cases where more than five years have elapsed since the expiration of the maximum sentence, or sentences, of the previous conviction, or convictions, and the time of the commission of the last felony for which he has been convicted. In computing the period of time as provided herein, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any of said five year periods.
The date of actual discharge from the state's custody, whether extended through revocation of parole or shortened by law due to "good time" diminution of the initial sentence, is the controlling date for determining the expiration of the predicate felony. State v. Johnson, 552 So.2d 807, 809-10 (La.App. 1st Cir.1989). Where less than five years have elapsed since the defendant's last conviction, the state need not prove the date of discharge on the earlier sentence in the habitual offender proceedings. See State ex rel. Clark v. Marullo, 352 So.2d 223, 230 (La.1977).
Focusing on the five-year cleansing period contained in LSA-R.S. 15:529.1(C), the defendant maintains that, because he was released from custody for the first predicate felony convictions more than five years prior to the commission of the instant offense, the trial court erred in relying upon the predicate convictions to adjudicate the defendant a third felony habitual offender. The defendant relies on State v. Williams, 580 So.2d 448 (La.App. 5th Cir.1991) and State v. Anderson, 349 So.2d 311 (La.1977), wherein he claims the courts "vacated the sentences because the defendants were released from custody for the earliest predicate offenses more than five years prior to the commission of the final offense on which the State filed its habitual offender bill of information."
In Williams, when read in connection with the subsequent opinion written on appeal after remand, State v. Williams, 609 So.2d 993 (La.App. 5th Cir.1992), writ denied, 613 So.2d 992 (La.1993), the Fifth Circuit appears to hold that the expiration of the maximum sentence of each of the predicate felony convictions must be within five years of commission of the offense which is being enhanced, in order to use the predicate offense for enhancement. (However, the Williams court did not discuss the possibility that time spent in custody as a result of subsequent convictions should be excluded from that five-year time period.)
In State v. Broussard, 213 La. 338, 34 So.2d 883 (1948), the Supreme Court construed the language of 1942 La.Acts, No. 45, § 2, (consisting of the same language now contained in the first sentence of LSA-R.S. 15:529.1(C)) to mean "that the statute shall not be applicable where a period of five years has intervened between the date of the commission of the current or latest felony and the expiration of the sentence imposed for the next previous felony conviction." Broussard, 34 So.2d at 885. The defendant in Broussard had been found to be a fourth felony offender. Although the fourth felony offense occurred more than five years after the expiration of the maximum sentence imposed on the first felony conviction, the court affirmed the defendant's adjudication as a fourth felony offender.
*715 Consistent with the position taken by the Louisiana Supreme Court in Broussard, in State v. Porter, 533 So.2d 112, 114 (La.App. 4th Cir.1988), the fourth circuit, citing State v. Mistretta, 490 So.2d 462, 464-465 (La.App. 4th Cir.1986), stated:
[I]f a defendant is sought to be found a triple offender then no more than five years can have elapsed between the first and second felony convictions, and between the second and third convictions excluding time served, although more than five years may have elapsed between the first and third convictions.
See also State v. Roquemore, 574 So.2d 473, 477 (La.App. 2nd Cir.), writ granted in part on other grounds 580 So.2d 912 (La.1991), where the court of appeal affirmed the defendant's adjudication as a fourth felony habitual offender despite the fact that more than five years had elapsed between the defendant's release on the first and second felony convictions and the commission of the most recent felony.
Although the defendant additionally cites Anderson, 349 So.2d at 311, to support his position, Anderson does not apply to the specific argument set forth by the defendant. The defendant in Anderson had been adjudicated a second felony offender, and the supreme court set aside the enhanced sentence, finding that the five-year cleansing period had occurred between his two felony convictions. Thus, Anderson did not deal with the specific problems set forth in the instant case of a third or fourth felony habitual offender.
In the instant case, although the defendant's 1984 discharge from prison occurred more than five years before his commission of the instant armed robbery offense, because his commission of the second felonies in 1985 was within five years of his discharge on the first convictions, and his commission of the instant felony was within five years of his discharge on the second felonies, the five-year cleansing period of Subsection (C) does not preclude the defendant's adjudication as a third felony offender. In so ruling, we decline to adopt the position advanced in Williams.
Additionally, defendant argues that his sentence is illegal and cruel and unusual punishment because the state has twice charged him as an habitual offender using one of the same predicate offenses on both occasions. Defendant argues that such conduct on the part of the state suggests that the appellant has been subject to double jeopardy in violation of the Louisiana Constitution. The habitual offender hearing is not a trial, and legal principles such as res judicata, double jeopardy, the right to a jury trial and the like do not apply. Louisiana's habitual offender statute is simply an enhancement of punishment provision. It does not punish status and does not on its face impose cruel and unusual punishment. State v. Dorthey, 623 So.2d 1276, 1279 (La.1993). After reviewing the record, we find no error in the trial court's adjudication of defendant as an habitual offender.
These assignments of error are without merit.

ASSIGNMENTS OF ERROR NUMBERS SEVEN AND EIGHT

(Assignment of Error No. 5 in Defendant's Brief)
In these assignments of error, defendant contends that the trial court erred in refusing to allow defense counsel to conduct voir dire of potential juror Estelle Westmoreland about seeing the defendant in shackles and handcuffs. The defendant further contends that the trial court erred in denying his challenge for cause of Westmoreland because he was denied full voir dire regarding prejudice.
In the instant case, several of the prospective jurors saw the defendant enter the courtroom in handcuffs and shackles following the lunch break on the first day of voir dire. The defendant objected and moved for a mistrial, which was denied by the trial court. However, the trial court individually questioned each member of the venire to determine whether or not he or she had observed the defendant in restraints. During the voir dire of the individual jurors, the trial court asked the prospective jurors whether or not they had seen the defendant enter the courtroom and, if they had, whether *716 or not they had noticed anything unusual about the defendant. The members of the venire who indicated that they had seen the defendant in handcuffs and/or shackles were immediately excused from jury service. Those who had not seen the defendant or had not seen anything unusual about the defendant were allowed to remain on the venire.
Estelle Westmoreland was one of the members of the venire who was questioned individually by the trial court. During her individual questioning, the following colloquy took place:
Q. Estelle Westmoreland. Ms. Westmoreland, I have a question that I'm asking all the jurors. When you were all here together in the courtroom a few moments ago before I sent you all out in the hall and you were here with everybody else, did you notice anyone come into the courtroom whom you thought might be the defendant in this case?
A. No, Judge, I didn't.
Q. You didn't notice anyone shown into the courtroom?
A. No.
Q. Thank you. Would you please follow Mr. LeBlanc into the other courtroom.
Westmoreland was allowed to remain as part of the venire and the regular voir dire subsequently continued. The following day, during regular voir dire examination of Westmoreland by defense counsel, the following colloquy took place:
Q. Okay. All right.
Mrs. Westmoreland, do I have it correct?
A. Yes.
Q. What do youYou had feelings about Mark [the defendant] when you first saw him yesterday.
A. Yes.
Q. What did you think?
A. That he was a young man charged with a crime.
Q. Well, do you recall at what point you first saw him yesterday?
A. Yesterday afternoon.
Q. And I guess my question is: Where did you first see him in the courtroom?
A. Coming in through that door and I was sitting out there.
Q. You saw who came in with him?
A. He came in with an officer.
At this point, defense counsel asked to approach the bench and a bench conference ensued which was not made a part of the record. A recess then was taken, and upon returning to trial, defense counsel questioned other prospective jurors and did not enquire further into Westmoreland's statements.
Subsequently, upon completion of the voir dire of the prospective jurors, defense counsel again raised the issue of Westmoreland's voir dire responses to the trial court. Defense counsel stated:
Well, I do recall that there was one matter that I don't think we resolved. DuringWell before the lunch break I asked Mrs. Estelle Westmoreland about whether she had seen my client brought into the courtroom. I am not certain when Her Honor asked her yesterday what her response was. I tend to believe that she said she had not seen him when he was brought into the courtroom.
Today when I asked her, she said in fact that she had seen him brought into the courtroom in the afternoon. And so I think that individually she needs to be questioned further regarding the problems that arose yesterday when my client was brought into the courtroom in restraints.
BY THE COURT:
Okay. It is the ruling of the Court that I will not enter that area again. The defendant was brought into the courtroom many times yesterday. I am not going to open that issue again.
At the time that she was questioned there was no objection to the questions donethe specific questions I asked her, and I was satisfied that she, as well as everyone else who remained on the panel, had not seen the defendant enter the courtroom in handcuffs.
Defense counsel then asked if the court reporter would check Westmoreland's responses during her individual questioning by the trial court to determine whether or not she denied that she saw the defendant enter *717 the courtroom. The tape from the individual voir dire then was played, wherein Westmoreland denied having seen the defendant. The trial court then noted that there were more proceedings that same afternoon after the defendant had been brought into the courtroom in restraints and that the defendant had been in the courtroom at the time of these other proceedings. Thus, the court stated that it assumed that Westmoreland was referring to a subsequent time when she saw defendant enter the courtroom and not to the time when defendant entered the courtroom in shackles. The court stated that it was not going to allow defense counsel to repeat an examination of the prospective juror since it had already "been done." Defense counsel then argued that he asked her about when she "first" saw the defendant enter the courtroom. The court responded:
All right. The first time she saw him might have been afterlater on. If she says that the original entry was not seen. There is a possibility, there is a probability that it all is correct and I am not going to re-hash it and enter that area again, and your objection is noted for the record.
Defense counsel subsequently challenged Westmoreland for cause, which was denied by the trial court. Defense counsel then peremptorily challenged Westmoreland.
An accused in a criminal case is constitutionally entitled to a full and complete voir dire examination and to the exercise of peremptory challenges. La. Const. Art. 1, § 17. The purpose of voir dire examination is to determine prospective jurors' qualifications by testing their competency and impartiality and discovering bases for the intelligent exercise of cause and peremptory challenges. State v. Anderson, 603 So.2d 780, 783 (La. App. 1st Cir.), writ granted in part on other grounds, 609 So.2d 831 (La.1992).
The scope of voir dire examination is within the sound discretion of the trial court; its rulings will not be disturbed on appeal in the absence of a clear abuse of discretion. State v. Williams, 560 So.2d 519, 523 (La.App. 1st Cir.1990). A review of the trial court's rulings should be undertaken only on the record of the voir dire examination as a whole to determine whether or not a sufficiently wide latitude was afforded the defendant in examining prospective jurors. State v. Thomas, 589 So.2d 555, 565 (La.App. 1st Cir.1991).
The defendant should be allowed to make such inquiries of prospective jurors as will enable him to secure his constitutional rights by eliciting facts which show grounds for challenges. His right to challenges may not be curtailed by the exclusion of nonrepetitious voir dire questions which reasonably explore the prospective jurors' potential prejudices, predispositions, or misunderstandings relevant to the central issues of the particular case. However, voir dire examination may not encompass unlimited inquiry into all possible prejudices of prospective jurors, nor their opinions on the evidence (or its weight) to be offered at trial, nor hypothetical questions and questions of law which call for any prejudgment of supposed facts. Thomas, 589 So.2d at 565.
After considering the trial court's questions and Westmoreland's responses during the individual voir dire of the prospective jurors, we find that the trial court did not abuse its discretion in denying defendant's repetitious questioning of Westmoreland on the same issue previously settled by the trial court or in denying the defendant's challenge of Westmoreland for cause. The trial court gave an adequate explanation for its actions, and its rulings did not unduly restrict defense counsel's voir dire examination of Westmoreland.
These assignments of error are without merit.

ASSIGNMENT OF ERROR NUMBER ELEVEN

(Assignment of Error No. 4 in Defendant's Brief)
In this assignment of error, defendant contends that the trial judge in the instant case did not have the authority to sit as a judge, as she was not a duly elected and commissioned judge pursuant to state and federal law. Defendant argues that the trial judge in the present case was seated in violation of the Voting Rights Act of 1965. He sets forth *718 that she was elected and assigned to a division that was created without pre-clearance. Thus, defendant contends, she lacked the judicial authority necessary to preside over the instant case.
We are unable to consider this issue because there is nothing in the record upon which to base our review. It is well-settled that appellate courts have no authority to receive or review evidence not contained in the trial court record. State v. Swan, 544 So.2d 1204, 1209 (La.App. 1st Cir.1989). Accordingly, this assignment of error is not subject to review on appeal.

PATENT ERROR REVIEW
Under the authority of LSA-C.Cr.P. art. 920(2), this court routinely reviews appellate records for patent error. After reviewing the record, we have discovered a patent sentencing error; namely, that the trial court failed to give the defendant credit for time served. See LSA-C.Cr.P. art. 880. Accordingly, we amend the sentence to reflect that the defendant is to be given credit for time served prior to the execution of the sentence. See State v. Greer, 572 So.2d 1166, 1172 (La.App. 1st Cir.1990). Resentencing is not required; however, we remand this case and order the trial court to amend the minute entry of the sentencing to reflect that the defendant is to be given credit for time served.

CONCLUSION
For the above and foregoing reasons, we affirm defendant's conviction. Defendant's sentence is amended, and as amended, the sentence is affirmed. The case is remanded to the trial court for further action consistent with the views expressed herein.
CONVICTION AFFIRMED; SENTENCE AMENDED, AND, AS AMENDED, AFFIRMED; REMANDED WITH ORDER.
NOTES
[1] In this same bill of information, the defendant also was charged with attempted first degree murder, a violation of LSA-R.S. 14:27 and LSA-R.S. 14:30. However, on September 5, 1990, this charge was severed from the instant charge. There is no indication in the record as to the disposition of the defendant's attempted murder charge.