860 So.2d 45 (2003)
STATE of Louisiana
v.
Joseph N. CHISLEY, Jr.
No. 03-KA-426.
Court of Appeal of Louisiana, Fifth Circuit.
October 15, 2003.
*46 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Andrea F. Long, Kia M. Habistreitinger, Assistant District Attorneys, Gretna, LA, for The State of Louisiana, Plaintiff-Appellee.
Bruce G. Whittaker, Louisiana Appellant Project, New Orleans, LA, for Joseph N. Chisley, Jr., Defendant-Appellant.
Panel composed of Judges JAMES L. CANNELLA, MARION F. EDWARDS and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
On April 28, 2000, the Jefferson Parish District Attorney filed a bill of information charging the defendant, Joseph N. Chisley, Jr., with possession of between 28 and 199 grams of cocaine, a violation of LSA-R.S. 40:967(F).[1] The defendant was arraigned on May 2, 2000, and pled not guilty.
Trial was held on August 14-15, 2001, and a 12-person jury found the defendant guilty as charged. On April 22, 2002, the trial court sentenced the defendant to 15 years at hard labor, the first five of which would be served without benefit of parole, probation or suspension of sentence. On that day, the State filed a habitual offender bill of information, alleging the defendant to be a third felony offender. The defendant was apprised of the allegations in the bill, and entered a denial. The judge scheduled a habitual offender hearing for later in the day, and called a recess.
When the court reconvened, the defendant expressed his desire to withdraw his denial as to the habitual offender allegations, and pled guilty to being a second felony offender. The judge advised the defendant of his right to a habitual offender hearing and his right to remain silent. The defendant stated he understood those rights, and wished to waive them. The judge vacated the defendant's original sentence, and imposed an enhanced sentence of 20 years at hard labor.
*47 On December 3, 2002, the defendant filed an application for post-conviction relief in the trial court, requesting an out-of-time appeal. On December 9, 2002, the trial court issued an order granting the defendant an appeal.

FACTS
Agent Dawn Gentner testified that she is assigned to the narcotics division of the Jefferson Parish Sheriff's Office. More specifically, she is a canine officer. On April 6, 2000, Agent Gentner and several other officers executed a search warrant at 1310 Claiborne Court in Jefferson, Louisiana. Gentner applied for and obtained the warrant. The object of the search was to uncover and seize narcotics.
Sergeant Bruce Harrison was the first officer to enter the house. Detective Jeff Heggelund followed. Harrison announced that he was a police officer and was there to execute a search warrant. He testified there were seven people in the living room, located in the front part of the house. Harrison heard the sounds of activity coming from the back of the house, and he looked down a hallway to see the defendant and Mark Filmore peering at him from the kitchen entryway. Harrison ordered the men into the hallway, and they complied. Heggelund secured the two men for safety reasons, placing them in handcuffs in the hallway.
Harrison then entered the kitchen and saw, in plain view, a large amount of what appeared to be crack cocaine on a dinner plate on the floor. He estimated that the material on the plate weighed 40 grams. There was also about 60 grams of crack in a clear plastic bag on the table. Harrison testified that some of the crack was cut into individual dosage units, and larger pieces were being prepared for cutting. There was also a scale in the kitchen, which Harrison believed was being used to weigh the crack. Harrison seized the plate and the crack it contained, as well as the crack on the table and the scale.
Sergeant Harrison informed Detective Heggelund of his findings, and Heggelund placed the defendant and Filmore under arrest. In the hallway, Heggelund searched the defendant's person incident to arrest. He recovered, from the defendant's pants pocket, four pieces of crack cocaine wrapped in a napkin. Heggelund then collected personal information from the defendant following the arrest, and the defendant told him that his address was 1310 Claiborne Court.
Agent Gentner and her canine were the last to enter the house. When Gentner attempted to check the area in back of the house for contraband, she encountered an aggressive pit bull. The defendant told her the dog in the yard was his, and he attempted to assist Gentner by removing the dog. The dog broke loose and tried to attack the officers. However, the defendant managed to catch the dog and secure it. Gentner testified that she field-tested the substance found in the kitchen, and the result was positive for cocaine.
Edgar Dunn, a forensic chemist with the Jefferson Parish Sheriff's Office, was accepted by the court as an expert in forensic chemistry and analysis of controlled dangerous substances. He testified that he tested the rock-like material seized in the instant case, and that it was positive for cocaine. He further testified that the weight of the cocaine found on the plate was 42.52 grams, the cocaine from the kitchen table weighed 60.66 grams, and the pieces of crack seized from defendant weighed .61 grams.
Defense witnesses Troy Powell, Mary Filmore, Joseph Louis Chisley and Dianne Chisley all testified that they were at the Claiborne Court house when the police arrived. Ms. Powell, the defendant's wife, *48 testified she was outside of the house. She saw an officer search the defendant on the front porch, and the officer did not find any contraband. Ms. Filmore, who is Mark Filmore's wife and the defendant's sister, testified she was in the living room when police arrived. She stated that she saw the defendant emerge from a bedroom, not the kitchen. She further testified that she saw the officers search the defendant outside, not in the hallway. Joseph Louis Chisley, the defendant's brother, testified he was in the living room when police entered. He also saw the defendant exit a bedroom, and did not see an officer search the defendant. Ms. Chisley, the defendant's sister-in-law, was inside the house when the officers arrived. She saw them arrest the defendant, and testified that the defendant was searched outside the house.

DISCUSSION
In his first assignment of error, the defendant contends that the evidence was insufficient to support the jury's verdict. Specifically, he complains that the State failed to prove that he possessed over 28 grams of cocaine. He argues that there were several individuals in the house at the time of the police search, and that the State failed to make an adequate showing that he possessed any more crack cocaine than the four pieces the officers found in his pocket.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Williams, 99-223 (La. App. 5 Cir.6/30/99), 742 So.2d 604, 607.
Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. Id. at 608. When circumstantial evidence is used to prove a case, the trial judge must instruct the jury that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." LSA-R.S. 15:438. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Captville, 448 So.2d 676, 678 (La.1984); State v. Qutoum, 02-780 (La.App. 5 Cir.1/28/03), 839 So.2d 323, 326, writ denied, 03-0595 (La.5/30/03), 845 So.2d 1059.
To support a conviction for possession of a controlled dangerous substance, the State must prove that the defendant knowingly and intentionally possessed the contraband, in this instance cocaine, in the amount of at least 28 but less than 200 grams. LSA-R.S. 40:967(F). Guilty knowledge is an essential element of the crime of possession of contraband, and such knowledge may be inferred from the circumstances. State v. Manson, 01-159 (La.App. 5 Cir. 6/27/01), 791 So.2d 749, 761. Possession can be either "actual" or "constructive." State v. Brisban, 00-3437 (La.2/26/02), 809 So.2d 923, 929.
A person not in physical possession of a drug may have constructive possession when the contraband is under his dominion and control. State v. Schieffler, 00-1166 (La.App. 5 Cir.2/13/02), 812 So.2d 7, 9, writ denied, 02-0712 (La.9/13/02), 824 *49 So.2d 1188. The key factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession are the defendant's knowledge that illegal drugs were in the area, his relations with a person found to be in actual possession, the defendant's access to the area where the drugs were found, evidence of recent drug use by the defendant, the existence of drug paraphernalia, and evidence that the area was frequented by drug users. Id; State v. Manson, supra.
In the instant case, the evidence did not show that the defendant had actual possession of the crack cocaine, with the exception of the four rocks found in his pocket. The question, then, is whether the defendant had constructive possession of the cocaine that was found in the kitchen, i.e., whether he had dominion and control over it. Undisputed evidence showed that the defendant lived at 1310 Claiborne Court, the residence from which the crack cocaine was seized. Detective Heggelund and Sergeant Harrison testified that, when the defendant was processed following his arrest, he gave that address as his place of residence. The defendant had also given Harrison the Claiborne Court address on a prior occasion. The defendant clearly had access to the place where the drugs were found.
The defendant argues that the search warrant application refers to a black female who sold drugs to an undercover officer at the Claiborne Court house. However, the defendant fails to note that the warrant application also describes a drug transaction between an undercover officer and a man at 1310 Claiborne Court. The defendant further argues that there were several people in the residence with him at the time the search was executed, and that his mere presence in the house does not establish constructive possession. It is true that being a resident of the premises where drugs are found is not, in and of itself, sufficient to prove constructive possession. State v. Kelly, 01-321 (La.App. 5 Cir.10/17/01), 800 So.2d 978, 982, writ denied, 02-3266 (La.11/1/02), 828 So.2d 565. However, a subject can have constructive possession if he jointly possesses drugs with a companion and if he willfully and knowingly shares with his companion the right to control of the drugs. State v. Marshall, 02-1067 (La. App. 5 Cir.2/25/03), 841 So.2d 881, 888.
Sergeant Harrison testified he was the first officer to enter the house. He saw seven people in the "front room" or living room. He scanned the room for any illicit activity. Seeing none, he investigated noises emanating from the back of the house. He saw the defendant and Mark Filmore stick their heads out of the kitchen and look down the hallway. After securing the two men, Harrison entered the kitchen and saw crack cocaine in plain view. Aside from the defendant and his brother-in-law, Filmore, no one was in the kitchen at the time the officers entered the house. Given that the defendant was in the kitchen, and that the cocaine was in plain view on the kitchen table and floor, it can be reasonably inferred that the defendant knew the cocaine was there. The fact that the defendant had crack cocaine in his pocket is further evidence of guilty knowledge.
The presence of drug paraphernalia, i.e., the scale and the razor blade, is indicative of dominion and control. Harrison testified that some of the crack in the kitchen had been cut into small, individualized doses. He further testified that a scale and razor blade located on the table would have been used to cut and weigh the crack.
The testimony and evidence revealed that the defendant exercised dominion and control over the cocaine in the kitchen *50 sufficient to constitute constructive possession. Accordingly, we find that the evidence, viewed in the light most favorable to the State, proved beyond a reasonable doubt that defendant possessed between 28 and 199 grams of cocaine. Therefore, this assignment of error is without merit.
In his second assignment of error, the defendant asks this Court to review the record for errors patent, pursuant to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The errors patent review revealed the following error.
According to the waiver of rights form signed by the defendant, the defendant pled guilty to being a second felony offender, and he was sentenced to 20 years at hard labor. We note that this sentence is illegally lenient.
The Louisiana Supreme Court has held that the applicable sentencing scheme is the one in effect at the time the offense is committed. State v. Sugasti, 01-3407 (La.6/21/02), 820 So.2d 518, 521. As of April 6, 2000, the date of the underlying offense, LSA-R.S. 40:967(F) provided that the sentencing range for possession of 28 to 199 grams of cocaine was ten to 60 years. Subsection G of the statute provided that, "[w]ith respect to any person to whom the provisions of Subsection F are applicable, the adjudication of guilt or imposition of sentence shall not be suspended, deferred, or withheld, nor shall such person be eligible for probation or parole prior to serving the minimum sentences provided by Subsection F."
As a second felony offender, the defendant was subject to the sentencing range prescribed by LSA-R.S. 15:529.1(A)(1)(a), which, at the time of the underlying offense, provided:
If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction.
Additionally, Subsection G of the Habitual Offender Law requires that any sentence under that statute must be imposed without benefit of probation or suspension of sentence. At the time of the underlying offense, the applicable sentencing range for the defendant as a second felony offender was 30 to 120 years. During the habitual offender proceedings, the judge erred in informing the defendant he was subject to a sentencing range of 20 to 60 years. It is unclear how the judge arrived at those numbers. Even under the current sentencing provisions of LSA-R.S. 40:967(F), the penalty for a second offender is 15 to 60 years. As a second felony offender, the defendant should have received a sentence of at least 30 years, without benefit of probation or suspension of sentence, and without the benefit of parole for at least the first ten years of the sentence.
Neither the State nor the defendant has raised the illegal sentence issue in the trial court or on appeal. However, this Court has the authority under LSA-C.Cr.P. art. 882 to correct an illegally lenient sentence despite the failure of either party to raise the issue in the district court or on appeal. State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790, 799. Accordingly, we vacate the defendant's illegally lenient habitual offender sentence and remand the matter to the trial court for re-sentencing in accordance with the law in effect at the time of the underlying offense. However, we *51 reserve the defendant's right to withdraw his guilty plea as a second felony offender, because a plea agreement that affords the defendant an illegally lenient sentence is an absolute nullity which cannot be confirmed on appeal. State v. Guilbeaux, 99-591 (La.App. 5 Cir.11/10/99), 749 So.2d 16, 19.

DECREE
For the reasons set forth above, we affirm the defendant's conviction. We vacate the defendant's sentence on the multiple bill, and remand the matter for re-sentencing, reserving the defendant's right to withdraw his plea of guilty to being a second felony offender.
CONVICTION AFFIRMED; SENTENCE VACATED; CASE REMANDED.
NOTES
[1] Mark Filmore was charged in the same bill of information as a co-defendant. This appeal concerns only Joseph N. Chisley, Jr., and not co-defendant Mark Filmore.