900 So.2d 855 (2005)
STATE of Louisiana
v.
Terrance VIDEAU.
No. 04-KA-923.
Court of Appeal of Louisiana, Fifth Circuit.
March 1, 2005.
*857 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Andrea F. Long, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Holli Herrle-Castillo, Marrero, LA, for Defendant/Appellant.
Terrance Videau, Kinder, LA, in Proper Person.
Panel composed of Judges JAMES L. CANNELLA, CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
CLARENCE E. McMANUS, Judge.
Defendant, Terrance Videau, was convicted of possession of cocaine, LSA-R.S. 40:967(C), and sentenced to five years at hard labor. Defendant filed a motion for new trial, which was denied. Thereafter, the state filed a habitual offender bill of information alleging defendant to be a fourth felony offender. After the state amended the habitual offender bill to remove one of the alleged prior convictions, and in accordance with a plea agreement, defendant admitted to the allegations in the amended bill. The court found defendant to be a third felony offender, and after vacating the original sentence, the court re-sentenced defendant to five years at hard labor.
Defendant now appeals. In appellate brief filed by counsel, defendant alleges that the trial court erred in failing to grant his motion for new trial, and in granting the state's motion to quash the subpoena he requested for juror Charles Green. In pro se brief, defendant again alleges that the trial court erred in granting the motion to quash and also that the evidence was insufficient to support the verdict.
The following facts were adduced at trial. Deputy Ricky Boudreaux testified that, on November 30, 2000, he was assigned to the patrol division of the Jefferson Parish Sheriff's Office. He performed a search of defendant, Terrance Videau, in the intake booking area of the Jefferson Parish Correctional Center. Boudreaux checked defendant for weapons and illegal contraband. He asked defendant to empty his pockets, and defendant complied. The officer removed defendant's shoes, and he checked defendant's socks. Inside defendant's left sock, Boudreaux found a rock of what appeared to be crack cocaine.
Boudreaux placed the rock in a clear plastic bag and assigned it a case number. *858 He gave the evidence to narcotics agent Anthony Sinegal. He charged defendant with possession of a controlled dangerous substance in a correctional facility. Daniel Waguespack of the Jefferson Parish Sheriff's Office Crime Lab testified that he tested the rock seized from defendant. It tested positive for cocaine.
Defendant's niece, Kishaundra ("Shaundra") Videau, testified for the defense. She said she and defendant were both arrested on November 30, 2000. They were transported to the Jefferson Parish lockup in separate police cars. She arrived in the facility's garage just after defendant did. Ms. Videau testified that, when defendant got out of the police car, the officer accompanying him bent over and picked up an object from the ground. The officer asked defendant, "What that is[?]" Defendant said, "I'm not going to let you play me like that, `cause that wasn't me." Ms. Videau then told the officer, "That wasn't on my Uncle Teen."
On cross-examination, Ms. Videau testified that she did not see the object the police officer picked up. She also testified that she did not see Deputy Boudreaux process defendant in the booking area.
The state called Detective Craig Bonnette on rebuttal. Bonnette testified that he transported Shaundra Videau to the Jefferson Parish Correctional Center. When he arrived there, Boudreaux was in the garage with defendant. He did not see Boudreaux bend over and pick up an object from the ground. Nor did he see Boudreaux show an object to defendant and ask, "[T]his is yours?" Bonnette testified that he escorted Ms. Videau into the lockup, and immediately put her into a holding cell. He did not see Boudreaux process defendant.
In his second pro se assignment, defendant makes a general argument that the evidence at trial was insufficient to support his conviction. When issues are raised on appeal as to sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine sufficiency of the evidence. When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any issues regarding trial errors become moot. State v. George, 95-0110, p. 6 (La.10/16/95), 661 So.2d 975, 978; State v. Conner, 02-363, p. 7 (La.App. 5 Cir. 11/13/02), 833 So.2d 396, 401, writ denied, 02-3064 (La.4/25/03), 842 So.2d 396.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291; State v. Williams, 99-223, p. 6 (La.App. 5 Cir. 6/30/99), 742 So.2d 604, 607. When circumstantial evidence forms the basis for a conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Williams, 99-223 at p. 8, 742 So.2d at 608. When circumstantial evidence is used to prove a case, the trial judge must instruct the jury that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." LSA-R.S. 15:438. This statutory test works with the Jackson sufficiency test to evaluate whether all evidence, direct or circumstantial, is sufficient to prove guilt beyond a reasonable *859 doubt to a rational jury. State v. Neal, 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657, cert denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).
To support a conviction for possession of cocaine, the state must prove that the defendant was in possession of the drug, and that he knowingly or intentionally possessed it. LSA-R.S. 40:967(C); State v. Chisley, 03-426, p. 6 (La.App. 5 Cir. 10/15/03), 860 So.2d 45, 48, writ denied, 03-3358 (La.4/2/04), 869 So.2d 874. Guilty knowledge is an essential element of the crime of possession of contraband, and such knowledge may be inferred from the circumstances. Id.
Deputy Ricky Boudreaux performed a lawful search of defendant for weapons and contraband as part of the booking process at the Jefferson Parish Correctional Center. He found a piece of crack cocaine inside of one of the socks defendant was wearing. The jury could have reasonably inferred that defendant knew the contraband was in the sock he was wearing.[1] Daniel Waguespack's testimony showed that the rock seized from defendant was indeed cocaine.
Although Kishaundra Videau testified that she saw an officer pick up an object from the ground while transporting defendant to the lockup, Detective Bonnette's rebuttal testimony refuted her claim. The jury apparently found the detective's testimony more credible than Videau's. Moreover, Bonnette's testimony showed that Videau was not in a position to see Boudreaux search defendant inside the lockup.
We find sufficient evidence under Jackson to support defendant's conviction for cocaine possession.
In his first counseled allegation of error, the defendant alleges that the trial court error in failing to grant the defense's motion for new trial. In the motion for new trial, defendant alleged that the verdict was "tainted" because juror Charles Green advised the court during deliberations that he could not reach a verdict. The court did not notify defense counsel of Green's statement or the court's response until just moments before the jury returned its verdict. Defendant argued that the court should have notified him of the juror's reservations, and that it should have held a hearing on the matter. Defendant asserted that, but for the court's actions, the jury would not have reached the unanimous verdict necessary for a conviction.
Deputy Joseph Lore, the court's bailiff, was called as a witness at the hearing on defendant's new trial motion. Referring to notes he made following the trial, Lore testified:
The jury was in deliberations for fifteen minutes, when I heard a knock on the door from the jury room. I entered the jury room and asked what I could do for them. One of the female jurors, who I thought might be the foreperson, stated that she thought they had a problem. I asked what was the problem. The white female juror said that Mr. Green was not going to vote. I asked Mr. Green what did he mean he was not going to vote? Mr. Green stated to me he was not there and did not know what happened. I explained to Mr. Green that  I explained to Mr. Green was in the jury box, and surely he heard the defense attorney and the witnesses, and also the district attorney's witnesses. Mr. Green said yes, he had heard them, but he didn't know what they meant. I then *860 asked Mr. Green what grade of school he finished. He said the ninth grade. I then approached the judge and related to him what Mr. Green said to me. The judge told me to go back into the jury room and advise Mr. Green to deliberate with the rest of the jurors.
Lore testified that he did as the judge instructed, and then he left the jury room. Lore further testified that he did not advise Green to vote a certain way. He did not instruct the juror on how to continue deliberations.
Following Lore's testimony, defense counsel argued that he should be allowed to call the jury foreperson and Mr. Green as witnesses to what was said. The judge denied that request. The judge noted that LSA-C.E. art. 606(B) prohibits a juror from testifying about jury deliberations, except where there is a question of an outside influence improperly brought to bear on any juror. The judge did not feel that there was such a question in this case. The judge further found that Lore's exchange with Green did not influence the verdict. The judge then denied defendant's new trial motion.
Initially in any trial, there is a presumption of jury impartiality. United States v. Winkle, 587 F.2d 705, 714 (5 Cir.1979), cert. denied, 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979); State v. Collins, 02-546, p. 4 (La.App. 5 Cir. 11/26/02), 833 So.2d 476, 478, writ denied, 03-0059 (La.10/3/03), 855 So.2d 307. But any unauthorized communication made by a non-juror to a juror (directly or indirectly) during trial about the matter pending before the jury is deemed presumptively prejudicial, if not made in accordance with the rules of court and the instructions and directions of the court made during the trial, with full knowledge of all the parties. The presumption is not conclusive, but the burden rests heavily upon the state to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to defendant. Remmer v. United States, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954); State v. Marchand, 362 So.2d 1090, 1092 (La.1978); State v. Collins, supra. See also, State v. Manning, 03-1982, pp. 76-77 (La.10/19/04), 885 So.2d 1044, 1109 ("A court official's unauthorized communication to the jury requires reversal of a defendant's conviction if it prejudiced the accused.... When the communication concerns a matter pending before the court, it is presumed prejudicial. . . .") (citations omitted). Prejudice may be shown by evidence that an extrinsic factual matter tainted the jury's deliberations. State v. Collins, supra.
LSA-C.Cr.P. art. 775 provides, in part, that "Upon motion of a defendant, a mistrial shall be ordered and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial[.]" Defendant alleged in his Motion for a New Trial that he learned of the bailiff's communication to the jury before the jury returned its guilty verdict.[2] We note that defendant could have objected at that point and moved for a mistrial, however he failed to do so.
In his motion for new trial, defendant cited, LSA-C.Cr.P. art. 851(4), which provides that the court shall grant a new trial on the defendant's motion whenever "[t]he defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding *861 standing the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment[.]" As the state points out, defendant concedes he was aware of the bailiff's communication with the jury before the jury delivered its verdict. Actually, the jury had informed the court that it had arrived at a verdict and was seated in the jury box when defense counsel was told what had happened in chambers. The alleged error was discovered, therefore, after the verdict was reached by the jury but before it was presented in open court.
We find that, while the trial court could not grant a new trial under Article 851(4), it should have done so under paragraph five of the article. That section provides that, on the defendant's motion, a court shall grant a new trial whenever "[t]he court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right."
The bailiff's initial exchange with Mr. Green was an unauthorized communication about a matter pending before the court, and as such it was presumptively prejudicial. The officer should not have questioned the juror without the knowledge of the parties, nor should he have taken it upon himself to explain anything concerning the trial. The appropriate response to the foreman's concern should have been to notify the judge immediately. As it was, the bailiff did not notify the judge until after he had spoken to Mr. Green. The judge also erred in his response. The judge should have notified the attorneys about the problem, and notified them of the action he wished to take, all on the record.
The state argues that the communication was harmless, as the bailiff did not discuss the facts of the case with the jurors. The state further contends that the bailiff did not say anything more to Green than was said in the jury instructions.
While the bailiff did not discuss specific facts of the case with Green, his comments could well have influenced the juror's decision. On a six-person jury, each vote is crucial, as all of the jurors must agree to arrive at a verdict. LSA-C.Cr.P. art. 782. Had Mr. Green voted not guilty, or abstained from voting, the result would have been a "hung" jury, and a mistrial. Since Green voted guilty after his contact with the bailiff, it can be inferred that the officer's actions influenced the jury's verdict.
In charging the jury, the judge said, in part:
When you reach the jury room in a few minutes, it will be your duty to discuss and consult with one another and to deliberate, with a view toward reaching an agreement. You each must decide the case for yourself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change your opinion if you are convinced that you are wrong. However, you should not be influenced to vote in any way on any question which you have to decide simply because a majority of your fellow jurors favor such a decision. In other words, you should not surrender your honest convictions for the mere purpose of returning a verdict.
In initially refusing to vote, Green failed to comply with the court's jury charge. In instructing Green, through the bailiff, to "deliberate with the rest of the jurors," the judge could well have led him to infer that he should vote the way the other jurors did. The state fails to meet its heavy burden of showing the bailiff's improper contact with the juror was harmless.
*862 The court, in Marchand, supra held that, "[a]n unauthorized communication to the jury by its bailiff requires reversal of the verdict, if the communication is prejudicial to the accused." (citations omitted). The court further found that,
[a] constitutional due process right of fair trial by jury, even, may be violated, if the trial jurors are subjected to influences through the attending bailiffs of the state which may cause their verdict to be influenced by circumstances other than the evidence developed at the trial. Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1964)[(1965)].
Marchand, 362 So.2d at 1092-1093.[3]
See also State v. Duplissey, 550 So.2d 590 (La.1989).[4]
In his second counseled allegation of error, and in his first pro se allegation of error, defendant alleges that trial court erred in granting the state's motion to quash the subpoena he requested for juror Charles Green.
Defendant filed a request with the court that the juror be subpoenaed to testify at the hearing on his Motion for New Trial. On July 12, 2002, the parties appeared in the district court for the motion hearing. The state made an oral motion to suppress the subpoena based on LSA-C.E. art. 606(B), which provides:
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether any outside influence was improperly brought to bear upon any juror, and, in criminal cases only, whether extraneous prejudicial information was improperly brought to the jury's attention. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.
Defense counsel argued that the information he sought was not prohibited by Article 606(B); that he did not plan to question Green about the discussions among the jurors that led to the verdict. Rather, he wished to ask Green about the conversation he had with the bailiff, and whether it influenced his vote. The trial court allowed the bailiff, Deputy Lore, to testify, but found that Article 606(B) prohibited defendant from calling Green as a witness.
*863 The prohibition set forth in Article 606(B), and in the previous jury shield law, LSA-R.S. 15:470, is intended to preserve the confidentiality and finality of jury verdicts, and the confidentiality of discussion among jurors. State v. Emanuel-Dunn, 03-0550, p. 8 (La.App. 1 Cir. 11/7/03), 868 So.2d 75, 81, writ denied, 04-0339 (La.6/25/04), 876 So.2d 829; State v. Richardson, 91-2339, pp. 3-4 (La.App. 1 Cir. 5/20/94), 637 So.2d 709, 712. The Louisiana Supreme Court has stated, "[N]o juror is competent to impeach the verdict of the jury on which he served. . . . This firmly-established rule prevents jurors from impeaching their verdict by disclosure of jury deliberations or even by testimony of misconduct in the jury room." State v. Abney, 347 So.2d 498, 502 (La.1977) (citations omitted). But the prohibition against juror testimony is not absolute, and must yield to a substantial showing that the defendant was deprived of his constitutional rights. State v. Currie, 00-2284, pp. 15-16 (La.App. 4 Cir. 2/13/02), 812 So.2d 128, 136-137, writ denied, 02-0786 (La.11/15/02), 829 So.2d 421; State v. Richardson, supra. Well-pleaded allegations of prejudicial juror misconduct violating a defendant's constitutional rights will require an evidentiary hearing at which jurors shall testify. Unless such pleadings are made with particularity, jury members are not competent to testify. State v. Emanuel-Dunn, supra; State v. Richardson, supra.
We find that the trial court erred in its interpretation of Article 606(B) by prohibiting defendant from calling Mr. Green as a witness. Defendant's constitutional right to a fair trial was adversely affected. Defendant included in his Motion for a New Trial, and in his argument to the court, specific allegations of prejudicial behavior by the bailiff. Counsel detailed to the court what he would ask Mr. Green if he were to testify at the motion hearing. Defendant wished to have the juror testify regarding an outside influence on the jury's deliberation, and such testimony is permitted under Article 606(B). Counsel said he did not wish to question Green about the jurors' interactions with each other, something which is prohibited by the article.
For the above discussed reasons, we find that trial court committed reversible error in denying defendant's motion for new trial. Accordingly, the defendant's conviction and sentence are reversed and vacated, and this case is remanded for a new trial.
REVERSED AND REMANDED
ROTHSCHILD, J., dissents.
ROTHSCHILD, J., dissents.
For the reasons stated more fully herein, I respectfully dissent from the majority opinion which finds reversible trial court error and vacates defendant's conviction and sentence.
Defendant contends that the trial court erred in denying his motion for new trial. The denial of a motion for new trial is not subject to appellate review except for an error of law. La.C.Cr.P. art. 858. Further, the ruling on a motion for a new trial is committed to the sound discretion of the trial judge and will not be disturbed on appeal absent a clear showing of abuse of that discretion. State v. Gerard, 96-366 (La.App. 5 Cir. 11/14/96), 685 So.2d 253, 260. The merits of a motion for new trial must be viewed with extreme caution in the interest of preserving the finality of judgments. State v. Rodriguez, 02-334 (La.App. 5 Cir. 1/14/03), 839 So.2d 106, 133.
The motion for new trial brought by defendant in this case was based on an alleged improper communication between the bailiff and one of the jurors during *864 deliberations. However, the record indicates and the majority notes that defendant was aware of this communication prior to rendition of the verdict, yet defendant failed to object or move for a mistrial. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La.C.Cr.P. art. 841. Defendant failed to object to the alleged error at the time it was made known to him, apparently as a trial strategy. If an objection or motion for mistrial had been set forth by defendant at the proper time, the trial court would have had the opportunity to consider the issue. Because defendant failed to do so and instead allowed the verdict to be rendered without an objection, his arguments as to this alleged error have been waived. See, State v. Wallace, 03-193 (La.App. 4 Cir. 11/26/03), 862 So.2d 286, 302, writ denied, XXXX-XXXX (La.4/8/04), 870 So.2d 269.
Further, a consideration of the merits of defendant's arguments fails to support a reversal of the conviction. The majority correctly notes that La.C.Cr.P. art. 851(4), which was relied upon by defendant in his motion for new trial, is inapplicable because the alleged error was discovered before the rendition of the verdict. However, in finding the trial court erred in denying the motion for new trial, the majority relies on La.C.Cr.P. art. 851(5) which provides that a new trial is warranted where "the court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right."
The trial court in this case questioned the bailiff as to what had occurred between he and the juror, and the court instructed the bailiff to record his rendition of this incident. The trial court was satisfied that the bailiff had not improperly communicated with this juror, but had merely reiterated what was told to the jury in the jury instructions. i.e., for the juror to deliberate with the other jurors. The trial court specifically found that the bailiff did not discuss the case itself with the juror, but only spoke to the juror to determine the basis of his problem. The trial court was evidently not of the opinion that the ends of justice would be served by a granting of a new trial, and I fail to find any abuse of discretion in this conclusion under the facts of this case.
I also disagree with the majority's conclusion that the trial court erred in quashing defendant's subpoena to call this juror as a witness at the hearing on the motion for new trial. La. C.E. art. 606(B) essentially provides that a juror may not testify as to any matter occurring during the course of deliberations, except as to whether an outside influence or extraneous prejudicial information was brought to the jury's attention. After a review of the record in this case, I fail to find that the actions of the bailiff in this case constituted an outside influence on this juror. Defendant has failed to show that he was prejudiced by the failure to call this juror as a witness. I therefore find no error of the trial court in refusing to allow the testimony of this juror at the hearing on the motion for new trial.
Finally, I agree with the majority's conclusion that the evidence presented was sufficient to sustain defendant's conviction for possession of cocaine. For these reasons, I would affirm defendant's conviction and sentence.
NOTES
[1] In State v. Chisley, supra, this Court found that the discovery of crack cocaine in the defendant's pocket was circumstantial evidence of guilty knowledge.
[2] At the hearing on the new trial motion, defense counsel stated, "[T]he Court told me pretty much what it said to the bailiff. But I don't know what the bailiff actually told the juror."
[3] In State v. Marchand, supra, the jury asked the court bailiff twice during five hours' deliberation if they could see a confession that was admitted in evidence. The bailiff told them they would not be allowed to see it. In making their second request, jurors told the bailiff they would be deliberating all night if they did not get the confession. The bailiff told them that the defense counsel was preventing them from obtaining the confession. Fifteen minutes later, the jury arrived at a guilty verdict. The Louisiana Supreme Court found the deputy's actions warranted reversal of the defendant's conviction.
[4] In Duplissey, supra, the Supreme Court held that an unauthorized communication to the jury by the bailiff was presumed to be prejudicial when it was about a matter pending before the trial court. The bailiff communicated with the jurors concerning the proper manner for the jurors to conduct deliberations where one juror could not read or write. The Supreme Court found that the State did not show that the unauthorized communication was not prejudicial. The conviction and sentence were reversed, and the case was remanded for a new trial.